**Appeal Dismissed, Petition for Writ of Mandamus Denied, and Opinion filed January 30, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-12-00011-CV

**J.C. WALTER, III, CAROLE WALTER LOOKE, J.C. WALTER, JR., LTD., F. FOX BENTON, III, MORENO ENERGY, INC., WILLIAM C. OEHMIG, THE CAIN 1988 DESCENDANTS' TRUST, MARY H. CAIN, MARY H. CAIN MARITAL TRUST, ROBERT D. JOLLY, HOWARD CHAPMAN, RUTH B. SMALLEY, ARTHUR L. SMALLEY, III, TOM E. SMALLEY, BARBARA BETH FRANK SHARMAN TRUST, JANIS KAY FRANK HENRY TRUST, AND MARGARET WEAVER, Appellants**

**V.**

**MARATHON OIL CORPORATION AND MARATHON E.G. LPG LIMITED, Appellees**

### NO. 14-12-01123-CV

**IN RE J.C. WALTER, III, CAROLE WALTER LOOKE, J.C. WALTER, JR., LTD., F. FOX BENTON, III, MORENO ENERGY, INC., WILLIAM C. OEHMIG, THE CAIN 1988 DESCENDANTS' TRUST, MARY H. CAIN, MARY H. CAIN MARITAL TRUST, ROBERT D. JOLLY, HOWARD CHAPMAN, RUTH B. SMALLEY, ARTHUR L. SMALLEY, III, TOM E. SMALLEY, BARBARA BETH FRANK SHARMAN TRUST, JANIS KAY FRANK HENRY TRUST, AND MARGARET WEAVER, Relators**

**O P I N I O N**

The central question presented by this case is: When one participant in a business agrees to pay another using a formula, and some disputes about the formula are resolved in an arbitration award confirmed by a court judgment, does the court abuse its discretion by declining to interpret the award to resolve other disputes about the formula that were not expressly addressed in the award? We hold that the answer is no.

This original proceeding and appeal concern a dispute between the relators, who are Limited Partners in the Alba Equatorial Guinea Partnership, L.P., and Marathon E.G. LPG Limited (MEGLPG), the general partner of the Partnership. The parties dispute the amounts due the Limited Partners as a result of the Partnership's investment in an oil and gas field off the coast of Equatorial Guinea. The dispute was eventually arbitrated, and the trial court confirmed the arbitration award in a final judgment.

More than a year later, believing MEGLPG was miscalculating the payments due under the final judgment, the Limited Partners filed a motion asking the trial court to enforce the judgment. The court denied the motion to enforce, and the Limited Partners filed both an appeal and a petition for a writ of mandamus challenging that denial. We conclude the trial court's denial of the Limited Partners' motion to enforce is not an appealable final judgment or interlocutory order, and we therefore dismiss the appeal. We further conclude the trial court did not abuse its discretion when it denied the Limited Partners' motion to enforce, and

we therefore deny their petition for writ of mandamus.

<b>BACKGROUND</b>

The Partnership was created in 1995 when the parties executed the "Agreement of Limited Partnership of Alba Equatorial Guinea Partnership, L.P." (the AEGP Agreement). Through the Partnership, the Limited Partners possessed an interest in the "Alba Project," defined as "the gas processing plant proposed to be constructed . . . to process the Gas Stream [produced from the Alba Field] to separate propane and butane from such Gas Stream and to sell and export such Products."

The Alba Field operations evolved over time. An onshore gas processing plant, referred to as Plant 3, was constructed to extract propane, butane, and condensate from the Gas Stream. Over time, additional offshore wells were drilled in the Alba Field and plans were made to construct an expanded gas processing plant to handle the increased production. Marathon Oil Company eventually acquired a controlling interest in the Alba Field operations, and its affiliate, MEGLPG, became the general partner of the Partnership. The expanded gas processing plant—known as Plant 4—was constructed adjacent to Plant 3, and Plant 3 was taken out of service.

## A. The parties submit their dispute to arbitration.

Under the AEGP Agreement, the Limited Partners are entitled to a portion of the Available Alba Net Cash Flow after Payout is reached. Payout occurs when the Discounted Alba Net Cash Flow (generated by selling the Products separated from the Gas Stream) equals $800,000. MEGLPG asserted that the AEGP Agreement did not include Plant 4. With Plant 3 out of service and Plant 4 outside the scope of the AEGP Agreement, MEGP reasoned, Payout would never occur

3

and the Limited Partners would never receive any portion of the Available Alba Net Cash Flow. The Limited Partners disagreed with MEGLPG's analysis and argued that Plant 4 was included within the scope of the AEGP Agreement and that the Payout Date had occurred in the first quarter of 2008. This primary dispute led to the arbitration at issue.[1]

As stated in the arbitration award, both sides sought declaratory judgments from the arbitration panel. The Limited Partners sought a declaration (1) that the Gas Stream, as used in the AEGP Agreement, included all gas from the Alba Field processed at the Alba Project; (2) that the Alba Project included any gas processing plant located in Equatorial Guinea owned or operated by the Partnership; (3) that Products, as used in the AEGP Agreement, included condensate; and (4) if it did not, the Limited Partners should not be burdened with the cost of separating condensate from the Gas Stream because they did not receive any allocation of revenue from that condensate. In response, MEGLPG sought a declaration (1) that the Alba Project was limited to Plant 3; (2) that the Gas Stream was limited to a specified volume of gas regardless of whether the Alba Project included only Plant 3 or encompassed both Plant 3 and Plant 4; and (3) that Products does not include plant condensate but is instead limited to butane and propane.

In addition to resolving the primary dispute whether Plant 4 was within the scope of the AEGP Agreement, the arbitration panel also was called upon to decide subsidiary issues such as (1) the construction of defined terms in the AEGP Agreement, including Alba Project, Gas Stream, and Products; (2) the determination of when, if ever, the Payout Date under the AEGP Agreement would

---

[1] In its arbitration award, the arbitration panel explained that "[t]he primary issue in this case is whether the [AEGP Agreement] applies to *all* gas processed at the new LPG facility, known as Plant 4, located at Punta Europa or whether the AEGP Agreement is limited only to the old 'Plant 3' and/or limited to a specific volume of feedstock gas, *i.e.* 93.3 mmcf/d."

4

occur; and (3) whether capital costs and certain specified categories of expenses should be subtracted when calculating the Available Alba Net Cash Flow.[2] In addition, the Limited Partners argued during the arbitration that MEGLPG had breached fiduciary duties it owed them, and that Marathon Oil was liable to them under the theories of alter ego, agency, and single business enterprise.

The arbitration proceeding was lengthy, and much of the arbitration record does not appear in our appellate record. During the arbitration, the panel asked the Limited Partners' expert, Dee Patterson, to prepare various Payout models that included or excluded various items in the calculation formula. In its request, the panel did not specifically mention condensate income taxes and whether they should or should not be deducted in calculating the Payout date or Alba Net Cash Flow after Payout. In response to the panel's request, Patterson submitted ten models, half of which excluded condensate from Products as MEGLPG argued, while the other half included condensate within Products as the Limited Partners argued. With respect to the five Payout models that excluded condensate from Products, Patterson excluded condensate revenues and did not deduct condensate income taxes.[3] In the remaining five Payout models, Patterson included condensate within the definition of Products, included condensate revenues, and deducted condensate income taxes. MEGLPG's expert agreed that Patterson's methodology was correct, but did not agree that particular items should be included

---

[2] In addition to capital costs, the expense categories addressed by the arbitration panel were: Upstream Costs, Compressor Costs, Utilities and Common Infrastructure Costs, Dehydration Costs, and Condensate Processing Costs.

[3] The Limited Partners contend that of Patterson's five models or cases that excluded condensate revenue, only one, the "Case 1 Model," included those aspects ultimately embodied in the panel's arbitration award: (1) Plant 4 is included in the "Alba Project," (2) "Products" excludes condensate, (3) the disputed cost items, other than capitalized interest, may be charged to the Limited Partners, and (4) the "Payout Date" occurred in the third quarter 2008. In its award, however, the panel did not adopt—or even mention—Patterson's Case 1 Model or state that it relied on Patterson's models generally in reaching its decision.

or excluded from the formula.

**B.    The panel issues its arbitration award and the Limited Partners obtain a final judgment confirming the award.**

In its arbitration award, the panel determined that the AEGP Agreement was ambiguous.[4] The panel agreed with the Limited Partners on the "central issue" and determined that Plant 4 was part of the Alba Project. In the panel's view, accepting MEGLPG's position that the Alba Project did not include Plant 4 would render the "Limited Partners' rights under the AEGP Agreement illusory," a result not permitted under Delaware law. The panel also agreed with the Limited Partners that the Gas Stream, as defined in the AEGP Agreement, was not limited in volume to the amount that was being produced at the time Plant 3 was constructed. The panel agreed with MEGLPG, however, that Products did not include condensate.[5] The panel also found that Payout occurred in the third quarter of 2008. The result of these determinations was that the Limited Partners had an interest in the revenues from the propane and butane generated by Plant 4 but not the condensate generated by Plant 4.

Having determined that Payout occurred in the third quarter of 2008, the panel addressed the formula for calculating the Available Alba Net Cash Flow after Payout. The AEGP Agreement defined this term to mean "all revenues from the sale of Products . . . less all expenditures actually paid . . . for [certain specified kinds of] Alba Project costs and expenses." The dispute regarding this issue

---

[4] The award observed that the AEGP Agreement "was not clearly written as to the rights and obligations of the parties with respect to the scope of the Alba Project or payments due the [Limited Partners] under the payout formula under the facts and circumstances as they developed following the execution of the Agreement."

[5] In the arbitration award, the panel explained that the Limited Partners asked the panel "to interpret the term 'condensate' and interpret the calculation of 'payout' under the Agreement with respect to numerous field cost allocations."

initially focused on condensate-related expenses. The Limited Partners argued that if Products excluded condensate, they should not be charged for the portion of Plant 4 operating expenses and capital costs allocated to separating condensate from the Gas Stream. The panel rejected the Limited Partners' argument, instead deciding that "the operative provisions of the AEGP Agreement do not contemplate an allocation of operating expenses and capital costs on the basis of those costs and expenses that are attributable only to the separation of butane and propane from the Gas Stream and those that are not." As a result, the panel decided that MEGLPG could deduct all of the Plant 4 operating expenses and capital costs, with the exception of capitalized interest. The panel went on to conclude that the Limited Partners' share of the Available Alba Net Cash Flow After Payout, beginning with the fourth quarter of 2008, would be "calculated going forward using actual product proceeds realized under the terms of the AEGP Agreement."

The panel's award stated that, as a result of the arbitration, the Agreement "is at least somewhat clearer in the current factual context and the parties have sufficient guidance to conduct their current operations." The award also recognized, however, that "disputes may occur in the future as the parties have an interest in a significant natural resource and facilities that likely will warrant operations for years to come."

After the panel issued its award, the Limited Partners moved to confirm it in the trial court. The trial court signed a Final Judgment Confirming Final Award on November 9, 2009. The final judgment incorporated the arbitration award in its entirety.

### C.    MEGLPG deducts condensate income taxes and other items when calculating Available Alba Net Cash Flow after Payout.

In calculating the amount due the Limited Partners following the arbitration, MEGLPG made two kinds of deductions that gave rise to the present case. First, MEGLPG began charging the Limited Partners for condensate income taxes by deducting them as part of the calculation of Available Alba Net Cash Flow. The Limited Partners believed these deductions violated the final judgment because the Payout calculation should not include any deduction for condensate income taxes. Although both the Limited Partners and MEGLPG asserted that the final judgment supported their respective positions, the final judgment did not expressly address the treatment of income taxes on revenue generated from the sale of condensate. In addition, the arbitration award confirmed by that judgment did not mention the models prepared by Patterson, nor did it expressly address the treatment of income taxes on the revenue from the sale of condensate either when calculating the Payout date or in deciding the formula for calculating the Available Alba Net Cash Flow after Payout.

Second, in its 2009 calculation of Available Alba Net Cash Flow after Payout, MEGLPG charged the Limited Partners for certain non-condensate taxes, royalties, and other obligations. The Limited Partners asserted that these obligations had already been taken into account in determining the third quarter 2008 Payout date, which was calculated using the accrual method of accounting. In response, MEGLPG argued that the final judgment required it to use the cash method of accounting going forward to calculate the Available Alba Net Cash Flow after Payout. Because the questioned charges had been paid in 2009, MEGLPG maintained, they were properly included again in the 2009 calculation.

**D.     The Limited Partners file a motion to enforce the final judgment.**

Following unsuccessful efforts to negotiate a resolution of these two disputes, the Limited Partners filed a Motion to Enforce the Final Judgment in the trial court.  In their motion, the Limited Partners asked the trial court to compel MEGLPG to change its payout calculation by removing the charge for condensate income taxes.  The Limited Partners asserted that the panel had adopted Patterson's Case 1 Model, which they argued did not include condensate revenue or deduct condensate income taxes from the Payout calculation.  In support of this contention, the Limited Partners submitted an affidavit prepared by Patterson.  In his affidavit, which post-dated the arbitration, Patterson opined that his Case 1 Model was the only model submitted to the panel that encompassed the panel's decision that Products did not include condensate and did not deduct condensate income taxes from revenues when calculating the Available Alba Net Cash Flow after Payout.

The Limited Partners' motion to enforce also asked the trial court to compel MEGLPG to remove the charges for non-condensate taxes, royalties, and other obligations that the Limited Partners believed had been double-charged.  The trial court denied the Motion to Enforce, and the Limited Partners filed both an appeal and a petition for writ of mandamus challenging that denial.

JURISDICTION

Before reaching the merits of the Limited Partners' arguments, we must address MEGLPG's contention that we lack jurisdiction to consider the Limited Partners' appeal because the trial court's order denying their Motion to Enforce is not an appealable final judgment.  MEGLPG argues the appropriate vehicle for the Limited Partners' complaints is a petition for writ of mandamus.  We agree with MEGLPG.

Generally, an appeal may be taken only from a final judgment. *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 352 (Tex. 2001); *Royal Indep. Sch. Dist. v. Ragsdale*, 273 S.W.3d 759, 763 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001)). Various statutes do authorize interlocutory appeals from limited categories of trial court orders, *e.g.*, Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (West 2008), but Texas courts construe these statutes strictly. *Jackson*, 53 S.W.3d at 355. The trial court's order denying the Limited Partners' motion to enforce does not fall within any of the statutory categories of appealable interlocutory orders.

Post-judgment orders made for the purpose of enforcing or carrying into effect a prior judgment are not subject to appeal because they are not final judgments. *Wagner v. Warnasch*, 295 S.W.2d 890, 893 (Tex. 1956); *In re Doe*, 397 S.W.3d 847, 849 (Tex. App.—Fort Worth 2013, orig. proceeding); *Wall St. Deli, Inc. v. Boston Old Colony Ins. Co.*, 110 S.W.3d 67, 69 (Tex. App.—Eastland 2003, no pet.); *Katz v. Inglehart*, No. B14-91-1376-CV, 1992 WL 56862, at *1 (Tex. App.—Houston [14th Dist.] March 26, 1992, writ denied) (not designated for publication). Although some courts have recognized that certain limited classes of post-judgment orders are appealable, the trial court's order does not fall within any of those classes.[6] Because the trial court's order denying the Limited Partners' motion to enforce is not a final judgment or an interlocutory order made appealable

---

[6] The Limited Partners cite several cases for the proposition that we have jurisdiction over their appeal of the trial court's order denying their motion to enforce. Because the cited cases do not address facts similar to those before us, we conclude they do not control. *See Cook v. Stallcup*, 170 S.W.3d 916, 919 (Tex. App.—Dallas 2005, no pet.) (appeal from post-judgment order releasing funds from the registry of the court); *Matz v. Bennion*, 961 S.W.2d 445, 451–52 (Tex. App.—Houston [1st Dist.] 1997, writ denied) (appeal addressing classification of a post-judgment order styled Judgment Nunc Pro Tunc); *Greiner v. Jameson*, 865 S.W.2d 493, 499–501 (Tex. App.—Dallas 1991, writ denied) (appeal from a sanctions order); *Reynolds v. Harrison*, 635 S.W2d 845, 846–47 (Tex. App.—Tyler 1982, writ ref'd n.r.e.) (appeal from post-judgment contempt order).

by statute, we hold it is not appealable. *Id.* We therefore lack jurisdiction over the Limited Partners' appeal, which must be dismissed.

Mandamus provides a vehicle for appellate review in these circumstances, however. Trial courts have an affirmative duty to enforce their judgments. *In re Crow-Billingsley Air Park, Ltd.*, 98 S.W.3d 178, 179 (Tex. 2003). Mandamus is an extraordinary remedy available in limited circumstances to correct a clear abuse of discretion or the violation of a duty imposed by law, provided the relator does not have an adequate remedy by appeal. *Id.* A party is entitled to mandamus relief to vacate an order that wrongly denies a prevailing party's attempt to enforce an unsuperseded judgment. *Id.* Because the Limited Partners allege the trial court abused its discretion when it denied their motion to enforce the final judgment, we hold we have jurisdiction to consider the Limited Partners' petition for writ of mandamus.

## ANALYSIS

In their petition for writ of mandamus, the Limited Partners contend the trial court abused its discretion when it denied their motion to enforce. Their arguments begin with the above-cited principle that a trial court has an affirmative duty to enforce its judgments. From that initial premise, the Limited Partners assert the trial court abused its discretion by denying their motion to enforce because MEGLPG violated the trial court's final judgment in two ways: (1) by charging the Limited Partners for condensate income taxes when calculating the Available Alba Net Cash Flow after Payout; and (2) by allegedly double-charging the Limited Partners for non-condensate taxes, royalties, and other costs. We address the Limited Partners' contentions in turn.

11

## I.      Standard of review

Mandamus relief is proper when the trial court abuses its discretion by committing a clear error of law for which appeal is an inadequate remedy. *In re Ford Motor Co.*, 211 S.W.3d 295, 297–98 (Tex. 2006). Having already determined that an appeal is not available to the Limited Partners, we focus only on whether the trial court abused its discretion when it denied the Limited Partners' motion to enforce the final judgment.

With respect to the resolution of factual issues committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *In re Xeller*, 6 S.W.3d 618, 623 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding). Instead, the party seeking mandamus relief must establish that the trial court could reasonably have reached only one decision yet did not do so. *In re USA Waste Management Resources, L.L.C.*, 387 S.W.3d 92, 95–96 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding) (citing *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)).

A trial court has no discretion in determining what the law is or applying the law to the facts. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005).

Whether a judgment is ambiguous is a question of law. *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003). A judgment should be construed as a whole to harmonize and give effect to the entire instrument. *Id.* If the judgment is unambiguous, the court must give effect to the literal language used. *Id.* An unambiguous judgment must be enforced without considering extrinsic evidence—

12

including the record—to determine its meaning. *Gulf Ins. Co. v. Burns Motor, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000); *Garza v. Phelps Dodge Refining Corp.*, 262 S.W.3d 514, 519 (Tex. App.—El Paso 2008, no pet.); *Freightliner Corp. v. Motor Vehicle Bd.*, 255 S.W.3d 356, 363 (Tex. App.—Austin 2008, pet. denied).

## II.   The Limited Partners have not established that the trial court abused its discretion when it denied their motion to enforce the final judgment.

This original proceeding presents an unusual situation. The arbitration award confirmed by the final judgment does not mention condensate income taxes at all, yet all parties contend that it unambiguously answers the question whether condensate income taxes should be deducted from revenues in calculating the Available Alba Net Cash Flow after Payout. The parties do not agree, however, on how the arbitration panel answered this question. As explained below, we conclude that the arbitration panel did not answer the question.

In their first issue, the Limited Partners contend the trial court abused its discretion by denying their motion to enforce the final judgment because the panel expressly found that condensate was not a Product, and it impliedly found that MEGLPG could not charge them for condensate income taxes. The Limited Partners make a multi-tiered argument to support this contention. First, they point out that the panel was asked to determine when, or if, Payout would occur under the terms of the AEGP Agreement. The panel found Payout occurred in the third quarter of 2008. According to the Limited Partners, the record shows that the only way the panel could have reached this result is by impliedly adopting the Case 1 Model of their expert Patterson, which they allege excluded condensate income taxes in calculating the Payout Date. Thus, the Limited Partners conclude the panel impliedly found that MEGLPG could not deduct condensate income taxes when calculating the Available Alba Net Cash Flow after Payout, and the principle

13

of collateral estoppel precludes re-litigating this issue. Because it is undisputed that MEGLPG did deduct condensate income taxes when calculating the Available Alba Net Cash Flow after Payout, the Limited Partners assert that it violated the judgment in doing so, and the trial court therefore abused its discretion by denying their motion to enforce.

In response, MEGLPG contends the trial court did not abuse its discretion when it denied the Limited Partners' motion to enforce because the panel impliedly found that condensate income taxes should be deducted when calculating the Available Alba Net Cash Flow after Payout. According to MEGLPG, the panel made this implied finding when it repeatedly rejected the Limited Partners' position that they did not receive the benefit of condensate revenue, so they should not be burdened with any costs associated with separating condensate from the Gas Stream. MEGLPG concludes that if the trial court had granted the motion to enforce, it would have abused its discretion because revisiting this issue would materially change the final judgment and grant the Limited Partners relief denied by the Mother Hubbard language in the judgment. In MEGLPG's view, res judicata bars the Limited Partners from obtaining any relief with respect to any other issues relating to the construction of the provisions of the AEGP Agreement at issue in the arbitration.

## A. The award and judgment are not ambiguous.

We begin by noting that we agree with the parties that the final judgment—which incorporates the arbitration award—is unambiguous. Because the judgment is unambiguous, we may not consult the underlying arbitration record to determine whether the trial court abused its discretion in denying the Limited Partners'

14

motion to enforce.[7]  Instead, we must give effect to the judgment's literal language, which we discuss next.  *Gulf Ins. Co.*, 22 S.W.3d at 422.  Accordingly, we do not consider the excerpts from the arbitration record or the post-arbitration affidavit of the Limited Partners' expert.  *Id.*

### B.    The award and judgment do not address the issue of MEGLPG charging the Limited Partners for condensate income taxes.

Considering the language of the judgment and award, we hold the trial court did not abuse its discretion when it denied the Limited Partners' motion to enforce. The award does not even mention—much less resolve—the question whether condensate income taxes should be subtracted from revenues in calculating the Available Alba Net Cash Flow after Payout.

The award explicitly states the issues in dispute and before the panel for resolution in the arbitration.  The parties disagreed about many things, including: whether Plant 4 was part of the Alba Project; whether Payout would ever occur and, if so, when; and whether certain specific costs and expenses should be subtracted under subsections (w) and (x) of the definition of Available Alba Net Cash Flow after Payout.  The award identifies the contested costs as upstream costs, capitalized interest, compressor costs, utilities and common infrastructure costs, dehydration costs, and condensate processing costs.  The panel did not include condensate income taxes—which fall under subsection (u) of the definition—in this list of contested items.  This omission is not surprising for two reasons: (1) as the arbitration award makes clear,  MEGLPG's position in the arbitration was that Payout would never occur; and (2) as a result of that position,

---

[7] Even if we could consult the record, because it is incomplete, it does not support the Limited Partners' contention that the trial court clearly abused its discretion when it denied their motion to enforce.  *See London v. London*, 94 S.W.3d 139, 143 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (Absent "a complete reporter's record on appeal, the court of appeals must presume the omitted portions are relevant and support the trial court's judgment.").

MEGLPG offered no calculations of the Available Alba Net Cash Flow after Payout until after the arbitration.[8]

After laying out the disputed issues, the panel addressed each of the challenged costs and decided that, with the exception of capitalized interest, each cost should be deducted from revenues when calculating the Available Alba Net Cash Flow after Payout. Having decided that the Alba Project included Plant 4 and that all of the contested costs except capitalized interest should be deducted from revenues when calculating the Available Alba Net Cash Flow after Payout, the panel found that Payout occurred in the third quarter of 2008.[9] In reaching these decisions, the panel said nothing about the treatment of condensate income taxes. Instead, the panel understood that its award was not intended to settle the meaning of the AEGP Agreement once and for all. The panel observed that its interpretation of certain key terms had made the ambiguous AEGP Agreement "at least somewhat clearer in the current factual context," but it recognized that "[d]isputes may occur in the future as the parties have an interest in a significant natural resource that likely will warrant operations for years to come."

Both the Limited Partners and MEGLPG contend that the panel nevertheless made an implied finding about how condensate income taxes should be treated, so principles of preclusion dictated how the trial court should rule on the motion to enforce. We disagree.

---

[8] The arbitration award establishes that during the arbitration, MEGLPG did recognize that if the panel decided that the Alba Project included Plant 4, Payout would occur sometime in 2008. Thus, once the panel decided Plant 4 was part of the Alba Project, the issue became when in 2008 the Payout date occurred.

[9] One of the three arbitrators dissented from this finding, explaining that he would have excluded compressor costs and found that payout occurred in the first quarter of 2008.

The Limited Partners argue the arbitration record shows that condensate income taxes must have been excluded in calculating the Payout date, and collateral estoppel precluded the re-litigation of this issue. As explained above, however, we may not consider the arbitration record because the award and judgment are unambiguous. For its part, MEGLPG relies on the arbitrators' findings that condensate-related costs should be deducted under subsection (w) of the definition, contending this means condensate income taxes should likewise be deducted. But condensate income taxes are addressed in subsection (u) of the definition, and the arbitrators never mentioned that subsection. MEGLPG also argues that the Limited Partners' claim for exclusion of condensate income taxes was denied by the Mother Hubbard language in the arbitration award, so res judicata barred them from obtaining any relief. The arbitration award does not indicate, however, that a claim regarding the treatment of condensate income taxes was before the panel.[10] Because the treatment of condensate income taxes was not disputed in or resolved by the arbitration, we reject the parties' arguments that res judicata or collateral estoppel dictated the outcome of the motion to enforce.[11]

---

[10] The arbitration provision of the AEGP Agreement applies to disputes "relating to the computation of the Alba Net Cash Flow Before Payout or the Alba Net Cash Flow After Payout for any Calendar Quarter" that have gone through an audit, objection, and negotiation procedure. The challenged computations for the quarters that are the subject of the Limited Partners' motion to enforce were provided after the panel issued its award.

[11] *See Zea v. Valley Feed & Supply, Inc.*, 354 S.W.3d 873, 877 (Tex. App.—El Paso 2011, pet. dism'd) ("If an issue was not actually decided in a prior arbitration proceeding or if its resolution was not necessary to the arbitration award, its litigation in a subsequent proceeding is not barred by collateral estoppel."); *Acker v. City of Huntsville*, 787 S.W.2d 79, 81 (Tex. App.—Houston [14th Dist.] 1990, no writ) ("The appropriate question [in addressing collateral estoppel] is whether the issue was actually recognized by the parties as important and by the trier of fact in the first action as necessary to the first judgment." (citing Restatement (Second) of Judgments § 27 cmt. j (1980)); *see also Welch v. Hrabar*, 110 S.W.3d 601, 606–07 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (stating the elements of res judicata and collateral estoppel); *Samedan Oil Corp. v. Louis Dreyfus Natural Gas Corp.*, 52 S.W.3d 788, 794 (Tex. App.—Eastland 2001, pet. denied) ("Res judicata does not apply to future disputes between the parties involving different questions.").

In sum, the unambiguous arbitration award confirmed in the final judgment did not expressly address the question whether MEGLPG should deduct condensate income taxes from revenues when calculating the Available Alba Net Cash Flow after Payout. Accordingly, we hold that the trial court did not clearly abuse its discretion when it denied the Limited Partners' motion to enforce seeking to stop such deductions. For the same reasons, we reject MEGLPG's contention that the award and judgment decided that condensate income taxes should be deducted when calculating the Available Alba Net Cash Flow after Payout. We overrule the Limited Partners' first issue.

### C. The award and judgment do not address the alleged double-counting of certain expenses because that dispute had not arisen at the time of the arbitration.

The Limited Partners begin their second issue with two undisputed facts: (1) the Partnership used the accrual method of accounting prior to the third quarter 2008 Payout date; and (2) the arbitration award ordered that the Available Alba Net Cash Flow after Payout be calculated quarterly on a cash basis, using proceeds actually realized and expenditures actually paid. The Limited Partners assert that MEGLPG violated the award and judgment by double-counting expenditures: in calculating the second quarter 2009 Available Alba Net Cash Flow, MEGLPG charged them for taxes and other costs that had been accrued previously in 2008.[12] Given this asserted violation, the Limited Partners contend that the trial court abused its discretion when it denied their motion to enforce.

MEGLPG does not dispute that it charged the Limited Partners in the second quarter of 2009 for taxes and other costs that had already been accrued in 2008. Instead, MEGLPG argues that the award required it to include all taxes and

---

[12] All parties admit this situation is a one-time event due to the transition from the accrual method to the cash method of accounting.

18

expenses actually paid during the relevant quarter in calculating Available Alba Net Cash Flow after Payout, and the award made no allowance for expenses that were previously accrued. MEGLPG concludes that any departure from the mandated cash method of accounting would violate the award and judgment, so the trial court correctly denied the Limited Partners' motion to enforce.

We agree with MEGLPG that the trial court did not abuse its discretion when it denied the Limited Partners' motion to enforce on the issue of double-counting, but we do so for a reason different from that suggested by MEGLPG. The final arbitration award was issued on June 1, 2009. The alleged double-counting problem did not arise until July 2009, when MEGLPG provided the second quarter 2009 Available Alba Net Cash Flow calculations to the Limited Partners. Because MEGLPG had not made the second quarter 2009 Available Alba Net Cash Flow calculations at the time of the arbitration, no dispute could have arisen over MEGLPG's handling of the transition period accounting. Thus, the arbitration could not have addressed or resolved the issue.

Because the arbitration did not address the double-counting allegation, the trial court did not clearly abuse its discretion when it denied the Limited Partners' motion to enforce based on the alleged double-counting.[13] We overrule the Limited Partners' second issue.[14]

---

[13] *See Zea*, 354 S.W.3d at 877 (stating that an arbitration award is conclusive on the parties only on those matters of fact and law submitted to the arbitrators); *see also Peacock v. Wave Tec Pools, Inc.*, 107 S.W.3d 631, 637 (Tex. App.—Waco 2003, no pet.) (observing that the res judicata effect of a judgment confirming an arbitration award that contemplates future acts would not reach those future acts); *Samedan Oil Corp.*, 52 S.W.3d at 794 ("Res judicata does not apply to future disputes between the parties involving different questions.").

[14] MEGLPG also argues that the Limited Partners accepted benefits under the award and failed to seek clarification from the arbitrators, so they may not challenge the award's treatment of condensate income taxes or its choice of cash accounting. These arguments fail because the arbitration award confirmed by the final judgment did not decide how condensate income taxes should be treated or how double-counting should be handled in transitioning to cash accounting.

### III.   MEGLPG has not established that it is entitled to sanctions.

In its brief, MEGLPG urges this Court to sanction the Limited Partners under Texas Rule of Appellate Procedure 52.11 for two reasons. First, MEGLPG contends the Limited Partners' petition for writ of mandamus is groundless because the Limited Partners were attempting to re-litigate matters MEGLPG believes were previously decided in the arbitration and confirmed in the final judgment. Second, MEGLPG asserts the Limited Partners flagrantly ignored the proper standard of review by allegedly asking this Court to conduct a de novo review of the arbitration award itself.

Rule 52.11 provides that a court may impose just sanctions on a party or attorney who is not acting in good faith as indicated by, among other things: (1) filing a petition that is clearly groundless; (2) grossly misstating or omitting obviously important and material facts in the petition; or (3) filing an appendix that is clearly misleading due to the omission of important and material evidence or documents. Tex. R. App. P. 52.11. When deciding a motion for sanctions, we exercise the discretion afforded by Rule 52.11 with prudence and caution and only after careful deliberation. *In re Lerma*, 144 S.W.3d 21, 26 (Tex. App.—El Paso 2004, orig. proceeding).

We have already determined that the issues raised by the Limited Partners in their petition for writ of mandamus were not decided in the arbitration. In addition, the Limited Partners have not asked this Court to conduct an improper de novo review of the underlying arbitration proceeding and award. Rather, the Limited Partners' brief refers to de novo review in the context of challenging the trial court's resolution of legal questions. Therefore, we conclude MEGLPG has not established any basis for sanctions under Rule 52.11.

## CONCLUSION

Because the trial court's order denying the Limited Partners' motion to enforce is not an appealable final judgment or interlocutory order, we dismiss the Limited Partners' appeal. In addition, the trial court did not abuse its discretion when it denied the Limited Partners' motion to enforce, so we deny their petition for writ of mandamus. Finally, we deny MEGLPG's motion for sanctions.


/s/     J. Brett Busby
         Justice

Panel consists of Justices Boyce, Jamison, and Busby.