ACCEPTED
14-15-00578-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
7/9/2015 1:56:55 PM
CHRISTOPHER PRINE
CLERK

## NUMBER 14-15-00578-CV

## IN THE COURT OF APPEALS
## FOR THE FOURTEENTH DISTRICT OF TEXAS AT HOUSTON

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
7/9/2015 1:56:55 PM
CHRISTOPHER A. PRINE
Clerk

### In re MICHELIN N. AM., INC., et al, Relator

Original Proceeding from the 152nd Judicial District Court of Harris County, Texas, Honorable Robert Schaffer; Trial Court Cause No. 2014-57952

## UNOPPOSED MOTION FOR EXPEDITED CONSIDERATION

Tim Riley
State Bar No. 16931300
RILEY LAW FIRM
The Civil Justice Center
112 East 4th Street
Houston, Texas 77007
Telephone: (713) 646-1000
Facsimile: (800) 637-1955
tdr@txtrial.com

Michael Bourland
State Bar No. 24009912
WITT, MCGREGOR & BOURLAND, PLLC
8004 Woodway Drive, Suite 400
Waco, Texas 76712
Telephone: (254) 751-9133
Facsimile: (254) 751-9134
mbourland@wmbwaco.com

John Gsanger
State Bar No. 00786662
Scott Marshall
State Bar No. 24077207
THE EDWARDS LAW FIRM
802 N. Carancahua St., Suite 1400
Corpus Christi, Texas 78401
Telephone: (361) 698-7600
Facsimile: (361) 698-7614
jgsanger@edwardsfirm.com
smarshall@edwardsfirm.com

Attorneys for Robert Coleman, et al.,
Real Parties in Interest

TO THE HONORABLE COURT OF APPEALS:

Come now Real Parties in Interest, Robert Coleman, et al., and file this Unopposed Motion for Expedited Consideration, and would respectfully show this Court as follows:

## OVERVIEW AND TIMELINE

This is a simple one-issue discovery dispute, and both sides have presented a clear record for the trial court (and this Court) to consider. The parties have agreed to ask the Court for expedited consideration of this matter.

The following timeline provides context for the Coleman family's request for one hour of access to visually observe two specific tire building machines:

**August (2003)** – RMS Equipment Co. manufactured the RMS 2000 first stage tire building machine, which Michelin purchased and later used to put the innerliner and carcass plies into the failed tire at issue. *Ex. 1.*

**October (2003)** – RMS Equipment Co. manufactured the RMS 3500 second stage tire building machine, which Michelin purchased and later used to put the steel belts and nylon plies into the failed tire at issue. *Ex. 1*

**February (2011)** – Michelin made the failed tire at issue, a LT265/75R16 BF Goodrich Rugged Terrain T/A, at its Fort Wayne, Indiana, plant. *Ex. 2.*

**September 8 (2012)** – Robert Coleman purchased the BF Goodrich Rugged Terrain T/A tire and had it mounted on his pickup. *Ex. 3.*

**September 26 - 27 (2013)** – Tracey Crocker, Milo Felger and others from the Fort Wayne tire plant testified (in another case) about grossly negligent tire building practices at the plant and falsified quality controls. *Ex. 1.*

**August 24 (2014)** – The tread peeled off of the tire on the Coleman family's pickup, resulting in a fatal crash with Beverly Kilpatrick, and the official Crash Report identified the defective tire as causing the crash. *Ex. 4.*

**September 15** – The Coleman family asked Michelin to observe "the tire building machines at that plant used to build LT 265/75R16 BF Goodrich Rugged Terrain T/A in February of 2011 at the Fort Wayne plant." *Ex. 5.*

**October 3** – The surviving family members of Beverly Kilpatrick sued Michelin as well as Robert Coleman. *Ex. 6.*

**December 10** – The Coleman family conferred with Michelin about observing the two "tire building machines which were used to assemble the innerliner and the steel belts with their nylon reinforcement." *Ex. 7.*

**December 19** – After Michelin declined to offer a protocol, the Coleman family intervened in the case and requested a one-hour observation for two identified machines pursuant to a detailed protocol. *Ex. 8; Ex. 9.*

**December 24** – The Coleman family asked Michelin to preserve the tire building machines so that they would remain available for visual observation. *Ex. 10.*

**December 31** – The Coleman family provided Michelin with additional information about the tire building stickers to help Michelin identify the two specific machines used to make the failed tire. *Ex. 11; Ex. 1.*

**January 2 (2015)** – At the first discovery hearing (less than a month after they had intervened), the Coleman family raised concerns about Michelin's unwillingness to preserve the tire building machines. *Ex. 12.*

**January 21** – The Coleman family moved for "one hour of limited access to [two] particular tire building machines" with no "sampling or destructive testing and … nothing more than a visual observation." *Ex. 13.*

**January 22** – The Coleman family offered to postpone the hearing on its motion to compel provided that Michelin would agree at least to preserve the two tire building machines, but Michelin would not agree. *Ex. 14.*

**February 2** – Michelin moved to strike the affidavit of a former Michelin tire engineer who explained why access to the tire machines was necessary to fairly link misconduct at the plant to the tire's defects. *Ex. 15; Ex. 16.*

**March 6** – The Coleman family explained how Michelin's motion to strike was

mistaken and offered evidence from three more tire engineers who further explained why access to the machines was necessary. *Ex. 17.*

**March 13** – The Coleman family objected to the only evidence that Michelin offered in opposition to the motion to compel because both affidavits were conclusory and not based on the personal knowledge. *Ex. 18.*

**March 16** – The trial court heard the discovery dispute, including the Coleman family's objections to Michelin's evidence and Michelin's objections to the Coleman family's evidence. *Ex. 19.*

**March 16** – At the hearing, the Coleman family served a brief addressing the burdens of proof, *Ex. 19 p. 22, Ex. 20*, and – after the hearing – another brief clarifying Michelin's misstatement at the hearing. *Ex. 21.*

**April 21** – The trial court denied Michelin's motion to strike the affidavit of one of the four tire engineers whose testimony the Coleman family offered and granted one hour's observation of the tire machines. *Ex. 22; Ex. 23.*

For ten months, the Coleman family has been requesting Michelin to preserve the tire building machines used to make the failed tire and has been asking to briefly observe those machines. Although there is disagreement about many issues in the case, the parties agree that this mandamus is suitable for accelerated consideration and so this request is unopposed.

**FOUR REASONS WHY THIS COURT SHOULD EXPEDITE DENIAL**

The issue before this Court is a single, narrow dispute. The trial court had conflicting evidence, including proof that Michelin had previously publicly disclosed similar information without any concern for confidentiality and proof that observation of the tire building machines is necessary for a fair trial. Based on this evidence, the trial court granted the narrowest possible access to the two identified tire building machines. *Ex. 22.* Specifically, the time and place of the visual observation of the machines are limited, the attendees are limited, the conduct of the attendees is limited, and measurements and sampling and testing and public disclosure are all forbidden. *Ex. 22.*

**Michelin Failed to Prove the Requested Information is a Trade Secret**

In a discovery dispute, the "party making the objection or asserting the privilege must present any evidence necessary to support the objection or privilege." Tex. R. Civ. P. 193.4(a); *In re CI Host, Inc.*, 92 S.W.3d 514, 516 (Tex. 2002). In the context of Michelin's trade secrecy allegations, the law requires that the "subject matter of a trade secret must be secret." *Stewart & Stevenson Services, Inc. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 95 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *see also In re Waste Mgmt. of Texas, Inc.*, 392 S.W.3d 861, 869 (Tex. App.—Texarkana 2013, orig. proceeding). Because the party asserting the privilege bears the burden of proof, if there is

6

a fact issue about disclosure of the privileged information to third parties, then

the burden to prove the privilege also requires proof that no waiver occurred:

> The burden of proof to establish the existence of a privilege rests on the one asserting it. If the matter for which a privilege is sought has been disclosed to a third party, thus raising the question of waiver of the privilege, the party asserting the privilege has the burden of proving that no waiver has occurred.

*Jordan v. Court of Appeals for the Fourth Sup. Judicial Dist.*, 701 S.W.2d 644,

648-48 (Tex. 1985) (citations omitted); *see also Cameron County v. Hinojosa*,

760 S.W.2d 742, 745-46 (Tex. App.—Corpus Christi 1988, orig. proceeding).

The trial court had ample basis to conclude that the access to Michelin's

tire building operations had been previously disclosed much more broadly

than the narrow one-hour visual observation at issue would entail:

- the two tire building machines were not made by Michelin but were purchased from RMS Equipment Co., a company that makes tire building machines for companies around the globe, *see Ex. 1, interrog. 1; Ex. 20, fn. 1;*

- local television stations in Fort Wayne have shown video of the tire manufacturing process filmed from inside the plant on the evening news, *see Ex. 17, Tab M*:







- Michelin's employees at the Fort Wayne tire plant discuss plant operations freely on the internet and post photographs to show what Michelin's tire building machines look like, *see Ex. 17, Tab L, p. 4*:

Yeah, that's all down in mixing which is it's own far end separate section of the plant. Crappy job, you get FILTHY, but pays about $22/hr and is easy to move into if you want the quick move up for the money.

This is a tire building machine:



You manually put the beads on to each end, then the machine closes, and the trays up above feed the ply material to it which the machine automates rolling around for an even roll every time. Depending on the tire there could be 1 ply, there could be 3 or more plies. Some you manually cut the plies, some the machine does it. THen the machine rolls the material around the bead, sidewall material is added, and it's off to another machine to form the tire and add tread.

- Michelin tire building machines and processes at another Michelin tire plant were filmed for the National Geographic television program *Mega-factories: Michelin*, *see Ex. 17, Tab N*:






- Michelin provides tours of its Fort Wayne tire building room to employee family members and government officials, and allows non-employee janitorial, pest control, and maintenance workers access to these areas, *Ex. 1 admissions 65-66, 68-73.*

In summary, the tire building machines were purchased by Michelin from a vendor that supplies such machines to many tire companies, and similar Michelin tire manufacturing processes have been disclosed on television and on tours of the plant. In contrast, Michelin offered two affidavits, but instead of being based exclusively on personal knowledge, both affiants admittedly based statements on "information made available to me." *Ex. 18 pp. 2-3.* The Coleman family specifically objected to these fatal flaws. *Id.* (citing *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008); *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 666 (Tex. 2010); *Washington DC Party Shuttle, LLC v.*

9

*IGuide Tours*, 406 S.W.3d 723, 731-32 (Tex. App.—Houston [14th Dist.] 2013, pet denied); *Valenzuela v. State & County Mut. Fire Ins. Co.*, 317 S.W.3d 550, 552-53 (Tex. App.—Houston [14th Dist.] 2010, no pet.)).  The Coleman family also objected that both affidavits were conclusory in their discussions of Michelin's "general" and "normal" practices and various plant-wide matters which the Coleman family has not requested to observe. *See Ex. 18 pp. 4-11.*

Michelin did not meet its burden of proof.

**The Coleman Family Proved this Discovery is Necessary for a Fair Trial**

If Michelin had proved its alleged privilege in connection with the limited one-hour visual observation of the two tire building machines (which it did not), then the burden would have switched to the Coleman family to "show reasonable necessity for the requested materials."  *In re Union Pac. R.R. Co.*, 294 S.W.3d 589, 591 (Tex. 2009) (orig. proceeding) (quoting *In re Bass*, 113 S.W.3d 735, 738 (Tex. 2003) (orig. proceeding)).  The Coleman family met this burden as a precautionary matter even though Michelin did not meet its own burden. *See Ex. 19 p. 22; Ex. 21.*

The Coleman family's claims in this civil action are based in part on prior Michelin employee testimony confirming grossly negligent tire building practices in Fort Wayne and the falsification of quality control processes:

> Michelin's employees and ex-employees working in the tire building and tire inspection rooms at Michelin's Fort Wayne,

Indiana plant in 2011 have knowledge of relevant facts in so far as they eyewitnessed roof leaks, puddled water, and the use of plastic sheeting to divert leaks on and near tire building operations as well as other negligent manufacturing practices.

…

Michelin's employees and ex-employees working in the tire building and tire component preparation rooms at Michelin's Fort Wayne, Indiana plant in 2011 have knowledge of relevant facts in so far as they eyewitnessed the use of rubber and rubber-coated components that lost some of their tack and the use of solvents in an attempt to restore that tack as well as other negligent manufacturing practices.

…

Michelin's employees and ex-employees working in the tire building and tire component preparation rooms at Michelin's Fort Wayne, Indiana plant in 2011 have knowledge of relevant facts in so far as they eyewitnessed the lax enforcement of standards to avoid misplacement and improper splicing of the steel belts and the rubber and rubber-coated components surrounding the steel belts.

…

Michelin's employees and ex-employees working in the final finish room at Michelin's Fort Wayne, Indiana plant in 2011 have knowledge of relevant facts in so far as they eyewitnessed the lax enforcement of standards and falsification of inspections and on-the-job sexual misconduct affecting the final finish inspection process.

*Ex. 8 pp. 12-13; see also Ex. 1 (admissions 1 – 6).* The Coleman family also asserted that the tire resulting from these grossly negligent and falsified practices at the tire building plant was defective in its design and manufacture. *Ex. 8 pp. 9-10, 14-15.*

The Coleman family offered evidence from four tire engineers to explain why access to the tire building machines is necessary for a fair trial where

11

there are claims of negligence at the plant leading to defects in a tire produced at the plant:

> When simultaneously addressing claims involving both negligent practices at the tire plant as well as manufacturing and design defects, such observations of the tire machines while in use – even one hour of observation limited to cause no interruption to the manufacturing process as set forth in the attached order – is invaluable to documenting how the criticized manufacturing processes contributed to (or failed to contribute to) the manufacturing anomalies identified in the tire. This substantive evidence was critical to establishing (1) the causal link between the criticized practices at the plant and the flaws in the tire, (2) the relative simplicity of incorporating safer tire designs calculated to increase the tire's robustness so that it would have been less susceptible to premature failure as a result of manufacturing defects, (3) better practices to more carefully build and inspect tires so that fewer tires with anomalies reach the consuming public, etc. This type of evidence is especially critical [because] … obtaining discovery from the tire companies is commonly the only means of establishing the link between a criticized practice at the tire plant and the safety concerns which subsequently manifest in a tire tread separation failure that kills or injures a claimant.

*Ex. 15.*

> I recently observed the assembly and building of tires at a manufacturing plant …. The importance of evidence derived from such an inspection is to establish its link to the observed defects or inadequacies of the failed subject tire and to identify capabilities of the manufacturer to produce a more robustly designed tire. These observations of the tire building machines in operation building a tire as near as practical to the tire at issue as contrasted to building a tire with known safer tire designs provides critical evidence to prove how careless conditions at the plant can result in manufacturing defects and to prove the ease with which the tire company can implement more robust tire designs to overcome shortcomings resulting from those tire building

processes.

*Ex. 17, Tab H p. 3.*

[T]he most widely known recent failure analysis is probably the one performed on the Firestone Radial ATX and Wilderness AT tires that were the subject of a massive recall in 2000. … Firestone retained the services of an outside consultant, Dr. Sanjay Govindjee, of the University of California at Berkeley, to attempt to provide an understanding about the failure mode seen in the subject tires. As part of his work, Dr. Govindjee's report indicated that he had access to … the Decatur, Illinois, tire plant as part of his analysis. NHTSA also retained the service of an outside consultant, Dr. William J. Van Ooij, of the University of Cincinnati, to assist in their failure analysis. Dr. Van Ooij's report indicated that his analysis was based on, among other things, … a tour of the Decatur, Illinois plant, tours of three other non-Firestone tire manufacturing facilities ... The depth and breadth of the information provided to these outside consultants in this matter was consistent with that reasonably necessary for them to perform the required failure analyses with scientific integrity.

*Ex. 17, Tab I pp. 6-7.*

Oh, most jurors, I'm sure, have no idea how tires are actually manufactured, or the complex nature of the various components, and the steps that have to go through – that have to be gone through in order to manufacture a tire. So I think [videotape of the tire building process at the plant] would be very beneficial from that standpoint, from a juror's perspective…. [I]t's a pretty complex process that, telling it I don't think does anywhere near the amount of – of helpfulness to the jury as actually showing them the actual manufacturing. I think they'd find it actually very interesting.

*Ex. 17, Tab J pp. 59-61.*

The Coleman family clearly demonstrated the "reasonable necessity" for

the observation of the tire building machines used to make the failed tire.

**Mandamus Review is Inappropriate for Reweighing Conflicting Evidence**

The Texas Supreme Court has established that the trial court's resolution of conflicting evidence is not to be second guessed on mandamus:

> It is well established Texas law that an appellate court may not deal with disputed areas of fact in an original mandamus proceeding.

*In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006) (orig. proceeding). Accordingly, the "trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision." *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998); *see also In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 686 (Tex. 2007) (orig. proceeding) ("If the record contains legally sufficient evidence both against and in support of the trial court's decision then mandamus will not lie because weighing conflicting evidence is a trial court function."); *In re Kuntz*, 124 S.W.3d 179, 180 (Tex. 2003) (orig. proceeding) ("A trial court's determination of a factual issue is entitled to deference in a mandamus proceeding and should not be set aside unless it is clear from the record that only one decision could have been reached."); *In re Le*, 335 S.W.3d 808, 813 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding) ("A trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports the trial court's decision.").

"In determining whether the trial court abused its discretion with respect to resolution of factual matters, we may not substitute our judgment for that of the trial court and may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004); *see also Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding) ("With respect to resolution of factual issues or matters committed to the trial court's discretion, for example, the reviewing court may not substitute its judgment for that of the trial court."); *Walter v. Marathon Oil Corp.*, 422 S.W.3d 848, 856 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("With respect to the resolution of factual issues committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court" and "the party seeking mandamus relief must establish that the trial court could reasonably have reached only one decision yet did not do so.").

In this case, Michelin failed to meet its burden and the Coleman family exceeded any burden that would have arisen if Michelin's affidavits had not been fatally conclusory and based on information beyond personal knowledge. This was not a close call. Yet even if this discovery decision had been a close call, it would have been based on conflicting evidence which cannot be reweighed by mandamus as Michelin's petition requests.

**Argument about "Creating Evidence" is Incorrect and was not Raised**

Michelin's mandamus petition raises – for the first time – the argument that the trial court's order improperly requires Michelin to "create evidence." *Pet. Mand. pp. 14-16.* This argument is factually incorrect and, in any event, differs from the arguments raised in the trial court.

Factually, the order only requires Michelin to make two identified tire building available for a brief observation "while the machines are in normal use." *Ex. 22 p. 3.* While the tire building machines are in normal use, the different aspects of the tire building process which are to be observed are all ordered with the express caveat that Michelin's compliance is required only to be "as near as is practical" to the tire building processes ordered to be observed. *Ex. 22 p. 2.* Nothing in this order requires Michelin to "create evidence;" instead, the order merely allows one hour of visual observation of identified tire building machines that already exist.

Legally, this argument is fatally flawed because it was not raised in front of the trial court. *See In re HEB Grocery Co., L.P.*, 375 S.W.3d 497, 505 n. 11 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (appellate courts do not reach issues on mandamus review which were not first raised in the trial court). It is noteworthy that Michelin offers no record citation showing where it raised this new argument that the order improperly requires the creation of evidence because Michelin did not raise this argument below.

## CONCLUSION AND PRAYER

This a simple discovery dispute involving just one hour of visual observation of two specifically identified tire building machines used to make a defective tire that resulted in a fatal crash. The Coleman family has been requesting this information for ten months, and both parties agree that this issue can be resolved on an expedited basis. The Coleman family urges that Michelin's petition can be denied on an expedited basis because the record shows that Michelin did not meet its burden and yet the Coleman family established the reasonable necessity for the requested one-hour observation of the tire building machines. Even if the evidence were less clear than the Coleman family has shown, then the trial court's decision would still have been based on conflicting evidence and this circumstance removes the issue from the proper scope of mandamus review. If this Court believes that this original proceeding requires full briefing and argument, then the Coleman family will be happy to address the matter in greater depth, but the family asks this Court to consider denying the petition without such delay.

Respectfully submitted,

THE EDWARDS LAW FIRM

BY: /s/ John Blaise Gsanger
John Blaise Gsanger
State Bar No. 00786662
Scott Marshall

State Bar No. 24077207
802 N. Carancahua St., Suite 1400
Corpus Christi, Texas 78401
Telephone: (361) 698-7600
Facsimile:  (361) 698-7614

Tim Riley
State Bar No. 16931300
Riley Law Firm
The Civil Justice Center
112 East 4th Street
Houston, Texas 77007
Telephone: (713) 646-1000
Facsimile: (800) 637-1955

Michael Bourland
State Bar No. 24009912
Witt, McGregor & Bourland, PLLC
8004 Woodway Drive, Suite 400
Waco, Texas 76712
Telephone: (254) 751-9133
Facsimile: (254) 751-9134

**ATTORNEYS FOR REAL PARTIES IN INTEREST**

## CERTIFICATE OF CONFERENCE

Counsel for Real Parties in Interest conferred with counsel for Relators, and the request for expedited consideration is agreed.

/s/ John Gsanger
John Gsanger

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties to the above cause on this 9th day of June, 2015.

/s/ John Gsanger
John Gsanger

**Via Facsimile: (512) 472-0721**
Thomas M. Bullion III
Chris A. Blackerby
GERMER BEAMAN & BROWN, LLP
301 Congress Avenue, Suite 1700
Austin, Texas 78701
Email: tbullion@germer-austin.com; cblackerby@germer-austin.com

**Via facsimile: (864) 232-2925**
Giles M. Schanen, Jr.
NELSON MULLINS RILEY & SCARBOROUGH, LLP
104 South Main Street, 9th Floor
Greenville, SC 29601
Email: giles.schanen@nelsonmullins.com

**Via Facsimile: (512) 482-5028**
Debora B. Alsup
THOMPSON & KNIGHT LLP
98 San Jacinto Blvd., Suite 1900
Austin, TX 78701-4238
Email: debora.alsup@tklaw.com

**Via Facsimile: (713) 523-4159**
Robert E. Ammons
Bennett A. Midlo
THE AMMONS LAW FIRM, LLP
3700 Montrose Boulevard
Houston, Texas 77006
Email: rob@ammonslaw.com; bennett@ammonslaw.com