The GULF INSURANCE COMPANY and Select Insurance Company, Petitioners,

v.

BURNS MOTORS, INC., Assignee of Leroy Nash, individually and d/b/a Nash & Associates, Respondents.

No. 98–1168.

Supreme Court of Texas.

Argued Sept. 22, 1999.

Decided April 20, 2000.

**418**

Clay E. Coalson, Carlos A. Mattioli, Robert J. Sigler, Rebecca R. Kieschnick, Corpus Christi, Cesar Ricardo Perez, McAllen, for Petitioners.

Rex N. Leach, McAllen, for Respondents.

Justice GONZALES delivered the opinion of the Court.

The main issue here is whether an insurance agency agreement obligates the signatory insurance companies to indemnify their agent for an agreed judgment rendered against the agent because of his misrepresentations to an insured. In a prior DTPA lawsuit, the insured obtained a judgment against the insurance agent for his misrepresentations about the commercial liability policy he sold to the insured. After judgment, the agent assigned to the insured his indemnification claim from the insurance companies that issued the policy. The insured, as the agent's assignee, sued the insurance companies for indemnification. The trial court granted the insurance companies a take-nothing judgment, but the court of appeals reversed. 975 S.W.2d 810. We conclude that no material fact issues exist and that the insurance companies are entitled to judgment as a matter of law. Accordingly, we reverse the court of appeals' judgment and render judgment that the insured take nothing.

# I

## Background

Between 1980 and 1983, Leroy Nash sold Don Burns three insurance policies from Gulf Insurance Company and Select Insurance Company for Burns's automobile dealership, Burns Motors, Inc. Nash sold the policies as independent agent for the insurance companies under an Agency–Company Agreement. Between January 1981 and November 1984, dissatisfied customers of Burns Motors sued the auto dealership in four lawsuits. While defending these lawsuits, Burns Motors learned that the polices it had purchased from Gulf and Select did not cover the liability alleged in these suits or the cost of defending them. Burns Motors did not sue either insurance company, but instead it sued Nash individually and his agency, claiming that Nash knowingly misrepresented the insurance coverage he sold to Burns Motors. Burns Motors alleged that Nash was liable for breach of a fiduciary duty, common law negligence, common law fraud, violations under the Texas Deceptive Trade Practices–Consumer Protection Act, and violations of article 21.21 of the Texas Insurance Code. Burns Motors sought actual damages for defending and settling the customers' suits, and further alleged that Nash's misrepresentations had been made knowingly as that term was defined in section 17.45(9) of the DTPA at the time of suit.

The DTPA lawsuit against Nash had been pending for four years when he appeared *pro se* and agreed to a judgment against him. The agreed judgment found Nash liable for $75,208.65 in actual damages, which equated the damages awarded Burns Motors' dissatisfied customers in the four lawsuits, $150,417.30 additional damages under the DTPA, and $25,000 for attorney's fees. Thus, the total award under the agreed judgment was $250,625.95. After the trial court rendered the agreed judgment, Nash assigned to Burns Motors all present and future claims that Nash could assert against Gulf and Select for contribution or indemnity under the Agency–Company Agreement. Furthermore, according to Nash's deposition testimony in the record, Burns Motors and Nash entered into a covenant not to execute on the agreed judgment.

Burns Motors, as Nash's assignee, then sued Gulf and Select for all sums that

Nash was obligated to pay under the agreed judgment. Gulf and Select moved for summary judgment, contending, among other grounds, that the Agency–Company Agreement excluded indemnification for an agent's knowing misrepresentations and that the assignment of the cause of action from Nash to Burns Motors was collusive and barred as against public policy. The trial court granted the motion without specifying the grounds and rendered a take-nothing judgment for Gulf and Select.

Burns Motors appealed the trial court's decision. The court of appeals reversed and remanded, holding that the Agency–Company Agreement was ambiguous about whether the insurance companies would indemnify the agent if, as Burns Motors alleged in this case, the agent merely passed on the companies' own misrepresentations. 975 S.W.2d at 814. The court determined that the ambiguity created a question of fact about the contractual indemnity provision that precluded summary judgment. 975 S.W.2d at 814–15. The court of appeals also concluded that Nash's assignment to Burns Motors was not void as against public policy. 975 S.W.2d at 815–16. Because of its disposition, the court of appeals did not reach Burns Motors' other complaints about the judgment. 975 S.W.2d at 816. In this Court, Gulf and Select contend that there is no genuine question of fact and that they are entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Specifically, Gulf and Select contend that they established their right to summary judgment because the terms of the Agency–Company Agreement exclude indemnification when an agent has incurred liability for his own knowing misrepresentations.

## II

### Discussion

Burns Motors seeks recovery only under the Agency–Company Agreement in its capacity as Nash's assignee. It has not sued to enforce any rights as an insured against the insurance companies that issued the policies. As assignee, Burns Motors stands in Nash's shoes and may assert only those rights that Nash himself could assert. *See Jackson v. Thweatt,* 883 S.W.2d 171, 174 (Tex.1994). Thus, our review begins with an analysis of Nash's Agency–Company Agreement with Gulf and Select.

The Agency–Company Agreement, under the subheading "Indemnification by Company," provides that Gulf and Select, as the "Company," will indemnify Nash, as "Agent," as follows:

A. Company shall indemnify and hold harmless Agent against any claims or liabilities Agent may become obligated to pay to or in behalf of any insured based on actual or alleged error of Company in its processing or handling Direct Billed or any other business placed by Agent with Company, except to the extent Agent has caused, contributed to or compounded such error.

B. Company will indemnify and hold Agent harmless from any civil liabilities Agent becomes legally liable to pay based on failure of Company to comply with the requirements of the Fair Credit Reporting Act, Title 15 U.S.C.A. Secs. 1681, et. seq. (the "Act"), in the procurement or use of consumer reports, as defined by the Act, ordered by Company or upon their express authorization, except to the extent Agent has caused, contributed to, participate in, or permitted such failure by act or inaction.

C. The Company shall also reimburse the Agent for any legal or other expenses reasonably incurred by the Agent in connection with investigating or defending any such liabilities.

D. The Agent shall promptly notify the Company when it receives notice of the commencement of any action relating to

such liabilities, and the Company shall be entitled to participate in such action, or to assume the defense of such action with counsel satisfactory to the Agent. If the Company assumes the defense of any such action, it shall not be liable to the Agent for any legal or other expenses subsequently incurred by the Agent in connection with such action.

The court of appeals concluded, in essence, that Paragraph A of the indemnity provision of the Agency–Company Agreement is ambiguous about the parties' intent to indemnify under these facts. The court of appeals agreed with Burns Motors' position that "Gulf and Select's alleged error in misrepresenting coverage questions to Nash that were then passed on to Burns as a potential purchaser could well amount to an error in handling business by Gulf and Select." 975 S.W.2d at 814. The court of appeals concluded that the fact that Nash passed on the misrepresentation to Burns Motors could but did not necessarily mean that he "caused, contributed to or compounded the error." 975 S.W.2d at 814. Thus, the court of appeals determined that the Agency–Company Agreement was ambiguous about whether the parties intended to indemnify Nash under these circumstances, and that this ambiguity created a fact question precluding summary judgment. 975 S.W.2d at 814–15.

Gulf and Select disagree. They do not dispute the court of appeals' premise that a misrepresentation of coverage could be a "processing or handling" error under the agreement. Nor do they deny that Nash should be indemnified if he innocently passed on their misrepresentations to Burns Motors. But they contend that the agreed judgment's express terms preclude Burns Motors' theory that Nash innocently passed on misrepresentations. Gulf and Select assert that Burns Motors, as Nash's assignee, is not entitled to contractual indemnity because the agreed judgment imposes liability on Nash for knowingly misrepresenting coverage to the insured. The insurance companies contend that because Nash knowingly misrepresented coverage, as a matter of law he fully "caused, contributed to or compounded" the error that resulted in liability in the previous DTPA lawsuit.

Burns Motors responds that we should interpret the agreed judgment to mean that Nash only knew he made representations of coverage to the insured, not that he knew his representations were false. Alternatively, Burns Motors contends that even if Nash made the misrepresentations knowingly, Burns Motors still should be indemnified for that part of the error that Nash did not cause, contribute to, or compound. We examine first Nash's liability under the agreed judgment before we determine if the Agency–Company Agreement indemnifies that liability.

## A

### Agreed Judgment

■ The agreed judgment states that Burns Motors purchased insurance from Gulf and Select based on Nash's advice and recommendations. Further, the agreed judgment states that "Defendant [Nash] did knowingly make such representations based upon the initial erroneous advice of said insurance companies and while acting as an agent in law for such companies." Burns Motors argues that to interpret the agreed judgment, we must consider the terms of the agreed judgment and other parts of the record. Burns Motors contends that Nash could not have understood the legal definition of "knowingly" under the DTPA because he is a layman and was not represented by counsel when the parties made the agreed judgment. According to Burns Motors, Nash's testimony at the hearing before the trial court signed the agreed judgment also demonstrates that Nash did not intend to use the term knowingly in its technical sense. In that testimony, Nash stated that he believed the representations that he was making to Burns Motors were true when he made them and that the insurance companies owed coverage in the

dissatisfied customer suits. Burns Motors also argues that Nash, in his subsequent deposition testimony, stated that his representations to Burns Motors were based on misinformation given to him by Gulf and Select, which Nash did not know to be false.

■ Here the agreed judgment is unambiguous, and we cannot consider the testimony offered by Burns Motors to explain the meaning of the agreed judgment. An agreed judgment has the same effect as any court judgment. *See Wagner v. Warnasch,* 156 Tex. 334, 295 S.W.2d 890, 893 (1956). When a judgment is rendered by consent it has neither less nor greater force or effect than it would have had it been rendered after litigation, except to the extent that the consent excuses error and operates to end all controversy between the parties. *See Wagner,* 295 S.W.2d at 893. An agreed judgment should be construed in the same manner as a contract. *See Gracia v. RC Cola–7– Up Bottling Co.,* 667 S.W.2d 517, 519–20 (Tex.1984). Thus, the court will examine and consider the entire instrument so that none of the provisions will be rendered meaningless. *See R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 519 (Tex.1980).

The reading that Burns Motors advocates, that knowingly should not be used in its technical sense here, is simply inconsistent with the agreed judgment's other recitals. The agreed judgment awarded Burns Motors additional damages as the DTPA authorized. The DTPA, as it read in 1991 when the agreed judgment was rendered, authorized additional damages not to exceed three times the amount of actual damages in excess of $1000 to a consumer who prevailed and obtained a finding from the trier of fact that the conduct of the defendant was committed knowingly. *See* Texas Deceptive Trade Practices–Consumer Protection Act, 63rd Leg., R.S., ch. 143, § 1, 1973 Tex. Gen. Laws 322, *amended by* Act of Sept. 1, 1995, 74th Leg., R.S., ch. 414, § 5, 1995

Tex. Gen. Laws 2988, 2992. Thus, to recover treble damages under the statute one must have obtained a finding that the conduct was committed knowingly. Knowingly as defined in 1991 meant "actual awareness of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim...." Texas Deceptive Trade Practices–Consumer Protection Act, 63rd Leg., R.S., ch. 143, § 1, 1973 Tex. Gen. Laws 322, *amended by* Act of Sept. 1, 1995, 74th Leg., R.S., ch. 414, § 2, 1995 Tex. Gen. Laws 2988, 2989.

In the previous DTPA lawsuit between Burns Motors and Nash, the trial court trebled the entire award for actual damages. Thus, when the agreed judgment recites that Nash knowingly made all the representations that form the basis of his liability, we must assume that knowingly was used as the DTPA defined. In other words, Nash made all the representations to Burns Motors knowing they were false.

Moreover, Burns Motors' position here contradicts its position in the previous DTPA lawsuit. Burns Motors sought treble damages against Nash under the DTPA because, it alleged, Nash knowingly misrepresented coverage. Only after Nash assigned any cause of action that he might have against Gulf and Select under the indemnity provision did Burns Motors contend that the term "knowingly" was used in some other sense in the agreed judgment.

We conclude that the agreed judgment clearly provides that Nash passed on the representations with actual awareness of their falsity. Next, we must consider whether the Agency–Company Agreement unambiguously denies indemnification when an agent has been found liable for knowing DTPA violations.

## B

### Contractual Indemnity

■ The Agency–Company Agreement provides that Gulf and Select will indemni-

fy their agent for errors or alleged errors in handling business, "except to the extent [their] Agent has caused, contributed to or compounded such error." Burns Motors alleges that the requirement that Gulf and Select have committed or are alleged to have committed errors in their handling and processing of its claims, resulting in the agent's liability, has been satisfied. As we said earlier, the court of appeals held that "Gulf and Select's alleged error in misrepresenting coverage questions to Nash that were then passed on to Burns as a potential purchaser could well amount to an error in handling business by Gulf and Select." 975 S.W.2d at 814. Because Gulf and Select do not contest the court of appeals' conclusion, we assume for purposes of construing this indemnity provision, but do not decide, that an intentional misrepresentation of coverage by the insurance companies constitutes an error by the company in handling business. Concluding that the requirements for indemnification have been satisfied, we must now determine how the exception to indemnity coverage applies here.

■■■■ We construe indemnity agreements under normal rules of contract construction. *See Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 284 (Tex.1998). The primary goal is to ascertain and give effect to the parties' intent as expressed in the contract. *See Ideal Lease Serv., Inc. v. Amoco Prod. Co.,* 662 S.W.2d 951, 953 (Tex.1983). Whether a contract is ambiguous is a question of law for the court to decide. *See Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983). When the contract is worded so that it can be given a certain or definite legal meaning it is not ambiguous and the court will construe the contract as a matter of law. *See Coker,* 650 S.W.2d at 393.

Here, we must determine whether the phrase "except to the extent Agent has caused, contributed to or compounded such error" is ambiguous when applied to these facts. The exclusion from liability for indemnification does not depend on the com-

pany's actions but rather on the agent's actions. Thus, we disagree with the court of appeals' conclusion that "the fact that Nash merely passed on the misrepresentation to Burns does not necessarily mean that he caused, contributed to or compounded the error." 975 S.W.2d at 814.

Burns Motors asserts that it should be indemnified under the Agency–Company Agreement based upon the agreed judgment rendered against Nash. But the agreed judgment established that Nash knowingly made the representations as defined by the DTPA. Thus, Nash knew that the representations he made to Burns Motors were either false, deceptive or unfair. Further, all of the misrepresentations that were made by Nash were made knowingly. Thus, there are no representations that Nash passed on innocently. Because Nash knowingly misrepresented all of the false statements made to Burns Motors, and because there is nothing in the record to show that Burns Motors did not rely solely on Nash's misrepresentations, we conclude that Nash fully "caused, contributed to or compounded" the error that caused Burns Motors damages. Thus, as a matter of law we hold that the Agency–Company Agreement language is not ambiguous and that the parties did not intend that the insurance companies would indemnify their agent who knowingly made misrepresentations about insurance coverage.

■■■■ The parties argue extensively about whether we should construe the Agency–Company Agreement by reference to the express negligence doctrine. That doctrine provides that "parties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms." *Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705, 708 (Tex.1987). Further, "the intent of the parties must be specifically stated within the four corners of the contract." *Ethyl Corp.,* 725 S.W.2d at 708. Here, the Agency–Company Agreement provides that the agent is, under certain circumstances, indemnified "except to the extent

**424**

Agent has caused, contributed to or compounded such error." Burns Motors argues that even if the indemnity provision precludes recovery for Nash's wrongful conduct, it still should allow indemnity for the part of the wrong that Gulf and Select caused. Thus, Burns Motors is not asserting that Nash should be indemnified for his wrong acts but only that he should be indemnified for the part of the error that Gulf and Select caused. The Agency–Company Agreement does not contemplate indemnifying the indemnitee from consequences of his own negligence. Thus, the express negligence doctrine does not apply here.

Finally, Nash's affidavit that he merely passed on misinformation from Gulf and Select does not create a fact issue. That possibility would be relevant if Burns Motors sued Gulf and Select directly for negligent claim handling or fraud. Here, however, we are only concerned with whether the parties intended in the Agency–Company Agreement to indemnify Nash for knowingly passing on erroneous information that misrepresented policy coverage to an insured. We conclude that the Agency–Company Agreement unambiguously excludes indemnification under these circumstances.

## C

### Additional Contractual Indemnity Provision

The court of appeals did not discuss Burns Motors' third point of error because it found a material fact issue about indemnification under Paragraph A of the indemnity provision of the Agency–Company Agreement. As this point presents an additional independent basis for the court of appeals judgment, we can either examine this argument or remand the case to the court of appeals for decision on this point. *See Scott & White Mem'l Hosp. v. Schexnider,* 940 S.W.2d 594, 597 (Tex.1996); *Roark v. Allen,* 633 S.W.2d 804, 811 (Tex. 1982). We choose to examine the issue

ourselves and now consider Burns Motors' third point.

Burns Motors argued in its brief to the court of appeals that summary judgment was improper because a material question of fact existed about whether Nash, and thus his assignee, Burns Motors, should be indemnified under another of the Agency–Company Agreement provisions. Paragraph A of the indemnity provision, which has already been examined, states that an agent may be entitled to indemnity except to the extent that he has caused, contributed to or compounded the error resulting in liability to the agent. Following that, Paragraph C of the indemnity provision states, "[t]he Company shall also reimburse the Agent for any legal or other expenses reasonably incurred by the Agent in connection with investigating or defending any such liabilities."

Paragraph C plainly states that the insurance company will reimburse the agent for certain expenses from defending "any such liabilities." The liabilities referred to in this paragraph are those for which the agent would be entitled to indemnification under Paragraph A. In other words, the parties intended that the insurance companies would not only indemnify the agent for certain liabilities, but would also pay for any expenses related to investigating or defending such liabilities. We have, however, already concluded Nash knowingly made all the misrepresentations to Burns Motors, that he fully caused, contributed to or compounded the error that led to his liability, and that he is not entitled to indemnification. Consequently, Burns Motors, as Nash's assignee, is contractually barred from recovery for legal or other expenses under Paragraph C.

## IV

### Conclusion

We hold that Nash is not entitled to indemnification under the Agency–Company Agreement and, therefore, Burns Motors cannot recover under the assignment.

Because of this conclusion we need not consider whether the assignment of the claim from Nash to Burns Motors violates public policy. We conclude that the court of appeals erred in reversing the trial court's summary judgment, and accordingly reverse the court of appeals' judgment and render judgment that Burns Motors take nothing.