[Cite as *Gay St. Polaris, L.L.C. v. Polaris Pediatrics, Inc.*, 2016-Ohio-7576.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Gay Street Polaris, LLC et al., | : | |
| Plaintiffs-Appellees, | : | No. 16AP-360 |
| v. | : | (C.P.C. No. 15CVH-3580) |
| Polaris Pediatrics, Inc. et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on November 1, 2016

**On brief:** *Taft Stettinius & Hollister LLP*, *James V. Maniace*, and *Celia M. Kilgard*, for appellees. **Argued:** *Celia M. Kilgard*.

**On brief:** *Abroms Law Offices*, and *Hillard M. Abroms*, for appellants. **Argued:** *Hillard M. Abroms*.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendants-appellants, Polaris Pediatrics, Inc. and Bruce Mirvis, M.D., appeal from the decision and entry of the Franklin County Court of Common Pleas granting the motion for summary judgment filed by plaintiffs-appellees, Gay Street Polaris and Boothby Thun. For the following reasons, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellees are owners of real estate located on Polaris Parkway in Columbus, Ohio. On July 15, 2011, appellees and appellants entered into a lease of the premises constituting a suite of 2,480 square feet. The lease sets an initial term of five years, terminating on June 30, 2016, with base rent due monthly in an amount provided by a

stated schedule and additional rent due under specific circumstances, such as late payment. Pursuant to paragraph 28(b) of the lease, if appellants fail to pay rent within 20 days of the due date, then appellees are permitted to terminate the lease or terminate appellants' possession without terminating the lease and endeavor to relet the premises. Under either scenario, appellants are not relieved of their "obligation to pay [rent] for the full term." (Lease Agreement at ¶ 28(d).) Specifically, if appellees relet the premises, appellants "shall pay to [appellees] the amount of the deficiency in full on demand." (Lease Agreement at ¶ 28(d).) "If [appellees] elect[] to terminate the Lease, [appellee] shall be entitled to immediately accelerate and forthwith recover as damages the aggregate Base Rent and Additional Rent for the remainder of the then applicable term of the Lease." (Lease Agreement at ¶ 28(e).)

{¶ 3} The lease further states that "[a]ll * * * consents or approvals which may or are required to be given by either party to the other shall be in writing * * * to be valid." (Lease Agreement at ¶ 30.) Under special stipulations of the lease, the parties agreed that "[n]either party has made any representations or promises, except as contained herein, or in some further writing signed by the party making such representation or promise." (Lease Agreement at ¶ 35(f).)

{¶ 4} Appellant Mirvis signed the lease as guarantor. Under the guaranty agreement, Mirvis guaranteed "the due and punctual payment * * * of all rents and any and all other monies * * * arising directly or indirectly out of the Lease for, during, and in respect of the full Term of the Lease." (Guaranty of Lease at ¶ C.) Furthermore, in the event that the tenant vacated the premises prior to the end of the term of the lease following a default by the tenant under the lease, Mirvis agreed that the guaranty "shall remain in effect throughout the full Term of the Lease and * * * shall be subject to acceleration in accordance with any acceleration of Rent provision contained in the Lease." (Guaranty of Lease at ¶ D.)

{¶ 5} In early May 2013, Mirvis met in person with David Boothby, former manager of Gay Street, to discuss his cash flow problems. Thereafter, the parties amended the lease by written agreement on May 23, 2013. The amendment reduced the base rent for the remaining term of the initial lease. According to the amendment:

>All other provisions of the Lease shall remain unchanged and in full force and effect.
>
>* * *
>
>Lessor and Lessee hereby ratify and confirm the Lease, as modified herein, and acknowledge that the Lease, as modified herein, is in full force and effect between Lessor and Lessee.

(First Amendment to Lease at 1.)

{¶ 6} David Boothby passed away on February 14, 2015. By letter dated March 25, 2015, Mirvis notified appellees that he was "implementing our verbal understanding of the ability to give 30 days written notice of termination of my lease * * * effective 4/30/2015," and, due to health issues, he would be winding down the business and vacating the property during the month of April. (Mar. 25, 2015 Letter at 1.) In April 2015, appellants vacated the premises.

{¶ 7} On April 28, 2015, appellees filed a complaint against appellants claiming breach of contract due to appellants vacating the premises and ceasing to pay rent 14 months before the expiration of the full lease term and by failing to leave the premises in "move-out" condition, in addition to claims for unjust enrichment, breach of guaranty, and attorney fees and expenses. (Compl. at 4.) Appellants answered and asserted failure to state a claim, novation, payment, accord and satisfaction, failure to mitigate, and waiver and estoppel as affirmative defenses.

{¶ 8} On February 2, 2016, appellees filed a motion for summary judgment. Within it, appellees emphasized that after the meeting between Boothby and Mirvis, the parties executed a written amendment to the lease that did not include a termination provision or term change but, rather, expressly stated that all other terms of the lease remain in full force and effect. Furthermore, appellees asserted that any alleged verbal agreement is unenforceable under the terms of the lease, and no signed writing exists that would amend or supersede the lease provision establishing the June 30, 2016 term.

{¶ 9} In support of summary judgment, appellees pointed to Mirvis's deposition testimony and March 25, 2015 letter, photographs of the premises, account statements, and an affidavit of property co-owner Frank Kennedy Brown. In the affidavit, Brown states that Gay Street relied on the lease provisions establishing long-term lease payments

in order to recover their investment of a $57,760 "build-out" of the suite to conform to appellants' medical office use.  (Brown Aff. at ¶ 4.)  He averred that Boothby never communicated to him the alleged agreement to allow a 30-day termination of the lease and otherwise had no documentation of a "verbal understanding" or other agreement regarding a 30-day termination of the lease.  (Brown Aff. at ¶ 5.)  On receiving appellants' March 25, 2015 letter indicating they were vacating the premises on April 30, 2015, Brown immediately contacted real estate agents to market the property but, despite interest from 14 prospective tenants, including 4 proposals and negotiations, the premises had not been relet.  In the affidavit, Brown states that at the time they moved out of the premises in April 2015, appellants owed $5,032.33 plus their monthly obligation of base rent of $2,738.33 per month and additional rent of $1,905.90 per month until June 30, 2016 for a total of $71,051.55 plus any additional expenses incurred by appellees in repairing and cleaning the premises beyond ordinary wear and tear.  Appellees estimated the repair costs to be around $6,000-$8,000 and noted that they "decided to forego" making those expenditures at this time in order to avoid taking on additional loss. (Brown Aff. at ¶ 8.)

{¶ 10} On March 3, 2016, the trial court granted appellants' motion for a 30-day extension to respond to the motion for summary judgment. On March 30, 2016, appellants filed a memorandum contra to summary judgment combined with, as an alternative, a Civ.R. 56(F) motion "for additional time to conduct discovery."  (Memo. Contra at 1.)  Appellants argued that affidavits of Doug Turner and Michael Bomgardner, two Southwest Pediatrics representatives who are non-parties to the case, demonstrate that genuine issues of material fact exist as to Mirvis's reasonable reliance on the oral promises of Boothby in deciding to wind down his business, merge with Southwest Pediatrics, and terminate the lease early.

{¶ 11} In their affidavits, Turner and Bomgardner averred that, as a part of due diligence in pursuing a potential business plan with appellants, they met in person with Brown in February 2015, and Brown stated that he was aware of Boothby's "verbal commitment" regarding "Mirvis' ability to give notice and get out of his lease anytime without penalty," that he would have to double check with the office manager as to specifics of what "anytime" meant, and that he would honor whatever agreement Boothby

made. (Turner Aff. at ¶ 4; Bomgardner Aff. at 3.) As a result, Turner and Bomgardner relied on Brown's assurances to proceed in helping Mirvis close his practice. Regarding the Civ.R. 56(F) motion, appellants submitted the affidavit of their attorney, Hillard Abroms, who stated that discovery was incomplete as he had not had sufficient opportunity to depose Brown and appellees' office manager, who was a "potential key witness to the oral agreement." (Abroms Aff. at ¶ 2.) Appellees filed their reply memorandum on April 6, 2016.

{¶ 12} On April 15, 2016, the trial court issued its decision and entry granting appellees' motion for summary judgment. In doing so, the trial court determined that, pursuant to paragraph 35(f) of the lease, "any alteration to the lease must be made in a signed writing," and the amendment to the lease both does not provide a right to early termination and states that all provisions in the lease other than those addressed in the amendment "remain unchanged and in full force and effect." (Trial Ct. Decision & Entry at 4.) Thus, the trial court concluded that "the lease could not be modified by oral agreement and the amendment made after the alleged promise to allow early termination of the lease specifically states that all provisions of the lease remain in full force and effect." (Trial Ct. Decision & Entry at 4.) Because in the trial court's opinion appellants could not use the alleged oral promise to defeat their obligation under the lease, the trial court denied appellants' motion to conduct additional discovery on that issue. Finally, "[v]ia the undisputed affidavit presented by [appellees] in support of their motion," the trial court awarded appellees unpaid rent against appellants, jointly and severally, in the amount of $70,051.55 plus interest and costs. (Trial Ct. Decision & Entry at 4.) Appellants filed a timely appeal to this court.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Appellants presents three assignments of error for our review:

I. The trial court erred when it granted summary judgment in Defendant's favor.

A. The trial court erred when it found the lease prohibited oral modification, mutual termination, or novation, because the lease contained no language prohibiting subsequent oral modification.

B. The trial court erred when it disregarded evidence the Defendants reasonably relied on Plaintiffs' stated intent to enforce the orally-agreed "early out" provision.

II. The trial court erred when it failed to grant additional time to conduct discovery under Civ.R. 56(F).

A. The trial court erred when it failed to grant Defendants additional time to conduct discovery, when Defendants had been recently alerted to a relevant witness whose testimony directly contradicted other witnesses in the case and was directly relevant to their reliance defense.

III. The trial court erred when it failed to hold a hearing on damages.

A. The trial court erred when it granted Plaintiffs prayer for damages in its entirety without holding a hearing, because Defendants pled failure to mitigate damages and payment as affirmative defenses and had no opportunity to be heard.

## III. DISCUSSION

### A. First Assignment of Error

{¶ 14} Under the first assignment of error, appellants argue that the trial court erred in granting summary judgment in appellees' favor. For the following reasons, we disagree.

{¶ 15} We review a summary judgment motion de novo. *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994), citing *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist.1993). When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992); *Brown* at 711. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

{¶ 16} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 17} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). " 'The requirement that a party seeking summary judgment disclose the basis for the motion and support the motion with evidence is well founded in Ohio law.' " *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997), quoting *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115 (1988). Thus, the moving party may not fulfill its initial burden simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. *Dresher* at 293. Rather, the moving party must support its motion by pointing to some evidence of the type set forth in Civ.R. 56(C), which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*

{¶ 18} If the moving party has satisfied its initial burden under Civ.R. 56(C), then "the nonmoving party * * * has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.*

{¶ 19} Appellants first argue that the trial court erred in granting summary judgment in appellees' favor because the plain language of the lease including the amendment did not prohibit oral modification and that record evidence supports appellants' allegation that an oral modification of the lease on or about May 7, 2013

permitted appellants to terminate the lease at any time. Appellants contend the language at paragraph 35(f) is "unequivocal" and only states that "there were no representations or covenents other than those found in the Lease itself or other signed writings." (Appellants' Brief at 10.) In support of this argument, appellants cite to a New York case, *Schwalben v. Cholowaczuk*, 347 N.Y.S.2d 402, 406 (N.Y.Sup.Ct.1973), for the proposition that the phrase "further writing" used in the lease refers to other written promises that a party has made at the time of the signing of the lease, rather than a prohibition against later orally agreeing to modify the lease.

{¶ 20} A lease is a contract, subject to the traditional rules of contract interpretation. *Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust, Inc.*, 156 Ohio App.3d 65, 2004-Ohio-411, ¶ 29. In interpreting a contract, "the role of a court is to give effect to the intent of the parties to the agreement." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. "[T]he intent of the parties to a contract resides in the language they chose to employ in the agreement." *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992). A court must examine the contract as a whole and look to the plain and ordinary meaning of the language used unless another meaning is clearly apparent from the contract. *Galatis* at ¶ 11. As stated by *Galatis* at ¶ 11-12:

> When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. *Id.* As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. *Gulf Ins. Co. v. Burns Motors, Inc.* (Tex. 2000), 22 S.W.3d 417, 423, 43 Tex. Sup. Ct. J. 647.
>
> On the other hand, where a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent. *Shifrin v. Forest City Enterprises, Inc.* (1992), 64 Ohio St.3d 635, 1992 Ohio 28, 597 N.E.2d 499. A court, however, is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties. *Id.*; *Blosser v. Enderlin* (1925), 113 Ohio St. 121, 2 Ohio Law Abs. 499, 3 Ohio Law Abs. 389, 148 N.E. 393, paragraph one of the syllabus ("there can be no intendment or implication inconsistent with the express terms [of a written contract]").

{¶ 21} Here, the July 2011 lease document states a term ending on June 30, 2016 with no provision for early termination. The May 23, 2013 amendment, which was

executed approximately two weeks after the alleged oral agreement, specifically states that all other provisions of the 2011 lease "remain unchanged and in full force and effect." (First Amendment to Lease at 1.)  Even more, the amendment expressly states that the parties ratified and confirmed the July 2011 lease, "*as modified herein.*"   (Emphasis added.)  (First Amendment to Lease at 1.)

{¶ 22} The unequivocal language of the amendment establishes the intent of the parties to validate the original terms of the July 2011 lease, modified only by the written changes provided in the amendment.  The amendment only modified the amount of rent paid, leaving intact provisions related to the term of the lease established in the July 2011 document. The July 2011 document states a term ending on June 30, 2016 with provisions providing for acceleration of rent for the full term or recovery of any deficiency in rent due after relet.

{¶ 23} Therefore, after undisputedly agreeing to the amendment, the parties were bound by the terms of the July 2011 lease with a modified rent payment amount.  "When contract terms are clear and unambiguous, courts will not, in effect, create a new contract by finding an intent which is not expressed in the clear language utilized by parties." *Allied Ents. v. Adjutant Gen. Dept.*, 10th Dist. No. 10AP-701, 2011-Ohio-4920, ¶ 15.  As such, appellants' argument to the contrary fails.

{¶ 24} Appellants next argue that the trial court erred in granting summary judgment in favor of appellees because it disregarded evidence that appellants reasonably relied on appellees' stated intent to allow unilateral, early termination of the lease.  As stated above, it is undisputed that on May 23, 2013, the parties entered into a written amendment of the original lease which expressly affirmed the terms of the original lease, including a June 30, 2016 full term and acceleration clause, and lacked an early termination provision to modify those existing terms.  Even viewing the evidence most strongly in favor of appellant, no reasonable factfinder could have found that appellants reasonably relied on an oral promise in light of the subsequent written amendment here.

{¶ 25} Accordingly, we overrule appellants' first assignment of error.

**B.  Second Assignment of Error**

{¶ 26} Under the second assignment of error, appellants contend the trial court erred in failing to grant additional time to conduct discovery under Civ.R. 56(F) in order

to depose Brown and the office manager regarding their knowledge of an existence of the oral agreement. However, in the first assignment of error, we determined that the written amendment after the alleged oral agreement unambiguously expressed the parties' intent to leave all provisions of the original lease intact with only a modification of the amount of rent. Therefore, the existence of the alleged oral agreement and additional discovery on this issue is immaterial on the facts of this case. Accordingly, we render appellants' second assignment of error moot.

### C. Third Assignment of Error

{¶ 27} Under the third assignment of error, appellants contend that the trial court erred in granting appellees' prayer for damages without holding a hearing. According to appellants, a hearing on damages should have been held because appellants "pled failure to mitigate damages and payment as affirmative defenses, and had no opportunity to be heard." (Appellants' Brief at 19.)

{¶ 28} "The burden of affirmatively demonstrating error on appeal rests with the [appellant]." *Miller v. Johnson & Angelo*, 10th Dist. No. 01AP-1210, 2002-Ohio-3681, ¶ 2; *see also* App.R. 9 and 16(A)(7). Pursuant to App.R. 16(A)(7), "[t]he appellant shall include in its brief, under the headings and in the order indicated, all the following: * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review *and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies*." (Emphasis added.) Here, appellants' arguments fail to provide any citations to any legal authority on which appellants relied. As such, appellants do not meet their burden on appeal.

{¶ 29} Furthermore, in the context of summary judgment, a hearing on damages is unnecessary where the issue of the amount of damages is raised and properly supported in a motion for summary judgment and no evidence is subsequently presented in opposition. *Nice v. Marysville*, 82 Ohio App.3d 109, 116 (3d Dist.1992) (finding "no need for such additional hearings [on the amount of damages], when the issues of liability and damages were raised in the motions for summary judgment and should properly have been addressed therein"). Here, appellees set forth evidence in their motion for summary judgment regarding the amount of rent due, mitigation efforts, and their failure to relet,

as supported by the affidavit of Brown, account documentation, and the lease.  Contrary to appellants' position, appellants had the opportunity to be heard in opposing summary judgment but failed to meet their reciprocal burden to produce competent evidence showing that there is a genuine issue for trial.  Under these circumstances, the trial court did not err in deciding the amount of damages without first holding a hearing.

{¶ 30}  Accordingly, we overrule appellants' third assignment of error.

## IV.  CONCLUSION

{¶ 31} Having overruled appellants' first assignment of error, rendering their second assignment of error moot, and having overruled appellants' third assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and KLATT, JJ., concur.

_____