# Supreme Court of Texas

No. 24-0525

S&B Engineers & Constructors, Ltd. and
Zurich American Insurance Company,

*Petitioners*,

v.

Scallon Controls, Inc.,

*Respondent*

On Petition for Review from the
Court of Appeals for the Ninth District of Texas

**Argued October 9, 2025**

JUSTICE YOUNG delivered the opinion of the Court, in which Chief Justice Blacklock, Justice Busby, Justice Sullivan, and Justice Hawkins joined.

JUSTICE BLAND filed a dissenting opinion, in which Justice Lehrmann, Justice Devine, and Justice Huddle joined.

After being injured in a terrible workplace accident, a group of plaintiffs brought tort claims against Sunoco Logistics Partners Operations GP, LLC and Sunoco Logistics Partners, LP (collectively "Sunoco") and S&B Engineers & Constructors, Ltd. S&B and Sunoco ultimately settled

the case. The settlement ended all litigation brought by the injured workers, whose claims are thus not before us. According to S&B and Sunoco, however, the injuries were caused not by their negligence but by that of a subcontractor, Scallon Controls, Inc. They therefore invoked the proportional-indemnification provision of their contract with Scallon. Scallon contends that the voluntary settlement—to which it was not a party—extinguished any possible indemnification rights. The court of appeals agreed with Scallon and thus upheld the district court's summary judgment that rejected the indemnification claims.

The court of appeals relied heavily upon two decisions of this Court, both rendered in 1987. We conclude that neither case applies. First, *Beech Aircraft Corp. v. Jinkins* held that a settling defendant has no right to contribution from a non-settling party under Texas statutory or common law. 739 S.W.2d 19, 21–22 (Tex. 1987). Today's case, however, implicates a freely negotiated contractual indemnification agreement. No such contract was at issue in *Jinkins*, which did not discuss contractual risk allocation or even use the words "contract" or "indemnification." Much less did it hold—or even hint—that parties could not voluntarily allocate risk by agreeing to proportional indemnification that could be determined following a settlement.

Indeed, in the second case, *Ethyl Corp. v. Daniel Construction Co.*, this Court expressly affirmed that "[p]arties *may* contract for comparative indemnity so long as they comply with the express negligence doctrine set out herein." 725 S.W.2d 705, 708–09 (Tex. 1987) (emphasis added). Under that doctrine, courts will not read a contract to require indemnification of the indemnitee's own negligence unless the contract mandates that result

2

"in specific terms." *Id.* at 708. We later explained that a contract satisfies *Ethyl* by *disclaiming* indemnification for a party's own negligence because, in that circumstance, "the express negligence doctrine does not apply" at all. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 424 (Tex. 2000). The indemnification contract here, all agree, does not authorize S&B or Sunoco to be indemnified for their own negligence.

We hold that neither *Jinkins* nor *Ethyl* nor any other legal principle precludes S&B and Sunoco from invoking their contractual indemnity rights. Whether they are entitled to any indemnification, however, presents another question—one not before us today. On remand, they may obtain proportional indemnification if and to the extent they carry their burdens of establishing that the settlement was made in good faith for a reasonable amount *and* that the liability is attributable to Scallon's negligence in whole or in part.

## I

Sunoco hired S&B to design and install a safety system in its South Texas refinery. S&B, in turn, hired Scallon to supply and program a fire-suppression system. Scallon installed the system, encoding a failsafe mode that would release a chemical fire suppressant if the system lost power. The parties dispute whether S&B instructed Scallon to disengage this feature.

One morning in January 2015, the system briefly lost power while another contractor's employees were working on insulation atop tall scaffolding in the refinery. The electricity lapse triggered the chemical fire suppressant. In their haste to escape, seven workers fell.

The injured workers sued S&B and Sunoco, which in turn filed a third-party suit against Scallon for breach of contract, breach of express

3

warranty, and enforcement of the indemnity provisions into which S&B and Scallon had entered. In May 2019, after four years of litigation, the workers settled with S&B and Sunoco.

No party disputes that the settlement fully resolved the workers' claims. Under the settlement agreement, which made no mention of Scallon, S&B paid $2,350,000, and its insurers paid $2,000,000 on its behalf. Sunoco's insurer, Zurich American Insurance Co., paid $400,000 of the settlement amount. Sunoco nonsuited its claims against Scallon in December 2021, and Zurich intervened the next day to assert claims for subrogation.

The case before us concerns only S&B and Zurich's post-settlement litigation efforts to obtain indemnification from Scallon. Underlying that litigation is the contractual relationship among the parties, including a purchase agreement for the fire-suppression system and a subcontract for services on that system. Both contracts include indemnity provisions, but the parties focus on the purchase agreement, which includes the following:

> To the maximum extent permitted by applicable law, [Scallon] shall defend, indemnify and hold harmless S&B, and its affiliated companies, subsidiaries and clients from and against any and all loss, damage, claim, suit, liability, strict liability, product liability, judgment and expense (including attorney's fees and other costs of litigation) and any fines, penalties and assessments, arising out of (A) damage to or loss of property or (B) bodily injury, disease or death to persons other than employees of [Scallon], its agents or subcontractors resulting from or in connection with the execution of this purchase order to the extent of [Scallon]'s negligence or willful misconduct. In case of comparative, concurrent and/or contributing negligence, fault or strict liability of [Scallon] or [S&B], whether through its employees and/or representatives, [Scallon]'s duty to indemnify and hold harmless referred to in the previous sentence shall be [Scallon]'s allocable share of comparative,

4

concurrent and/or contributing negligence, fault or strict liability.

Based on this provision, S&B and Zurich sought indemnification from Scallon; Scallon refused. In the post-settlement litigation, S&B and Zurich claim that Scallon owed them its proportional share of the settlement amount, equal to its share of liability for the accident. S&B and Scallon filed cross-motions for summary judgment, and the trial court granted Scallon's. The court of appeals affirmed. It held that the express-negligence doctrine barred S&B from recovering under a theory of indemnification; the record could not support a contribution claim; and Zurich's claims were time-barred because it entered the litigation long after the underlying tort claims' limitations period had run. 716 S.W.3d 590, 608–11 (Tex. App.—Beaumont 2024).

S&B and Zurich each sought this Court's review of the court of appeals' judgment. We granted both petitions and now reverse. We first address the indemnification issue that affects both parties and then turn to the limitations issue that affects Zurich.

## II

The court of appeals understood *Jinkins* to attribute S&B and Sunoco's settlement exclusively to their own negligence. That premise, if correct, would preclude indemnification under *Ethyl*'s express-negligence doctrine. Indeed, the contract itself would preclude indemnification because in it S&B and Sunoco affirmatively disclaimed any right to indemnification for their own negligence.

The premise, however, is mistaken. We first address why *Jinkins* does not apply to contractual undertakings like the indemnification provision here. We then explain why *Ethyl* is also inapplicable (or, said

5

differently, why the disclaimer satisfies it). Last, we address the proceedings that will resume on remand.

## A

All parties agree that the settlement resolved the injured workers' tort claims. The key dispute is whether S&B and Zurich may ask a factfinder to allocate any portion of the settlement amount to Scallon's negligence, or whether, as the court of appeals and Scallon contend, it covered only their own as a matter of law.

The latter view relies on our decision in *Jinkins*, which examined "the contribution rights of a settling party under both statutory and common law contribution schemes" when an alleged joint tortfeasor does not participate in the settlement. 739 S.W.2d at 19. We acknowledged "the general rule that a cause of action for damages for personal injuries may be sold or assigned" but held that "a defendant can settle only his proportionate share of a common liability and cannot preserve contribution rights under either the common law or the comparative negligence statute by attempting to settle the plaintiff's entire claim." *Id.* at 22.

*Jinkins* was open about its limited scope: common-law and statutory avenues for a settling party to impose contribution obligations on a non-settling party. We did not address or even mention a very different source of legal authority: voluntarily formed contracts providing for indemnification. In other words, public policy led the Court to refuse to find or create rights of contribution in certain situations, but we said nothing to suggest that *parties* could not create rights to indemnification if they deemed it in their interest to do so.

*Jinkins*'s holding does not extend beyond the common-law and

6

statutory contexts it addressed. Proportional or comparative indemnification by contractual agreement differs fundamentally from common-law and statutory schemes for the basic reason that the parties bargained for and agreed to it. By contrast, in *Jinkins*, one defendant who *lacked* any contractual relationship with another defendant found himself subject to a demand for compelled contribution. The law, we said, should not allow "defendants responsible for the plaintiff's injuries a right to, in effect, buy the plaintiff's claims and prosecute the other jointly responsible parties." *Id.* But in the context of contractual indemnity, a defendant does not "buy" the plaintiff's rights and use them against other liable parties, as if it could profit from successfully prosecuting the very claims that have been settled. Rather, the defendant *already has* a contractual right to indemnification that it seeks to enforce against the other liable parties. "Freedom of contract allows parties to bargain for mutually agreeable terms *and allocate risks* as they see fit." *Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 912 (Tex. 2007) (emphasis added).

An indemnification suit following a settlement is no new innovation, in any event. Our decision in *Fireman's Fund Insurance Co. v. Commercial Standard Insurance Co.*, for example, outlines a system in which an indemnitee first settles and then brings an indemnification suit to establish actual liability, where he must show "that his settlement was reasonable, prudent and in good faith under the circumstances." 490 S.W.2d 818, 824 (Tex. 1972), *overruled on other grounds by Ethyl*, 725 S.W.2d at 708; *see also, e.g., Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 799 (Tex. 1992); *Gulf, Colo. & Santa Fe Ry. Co. v. McBride*, 322 S.W.2d 492, 497 (Tex. 1958).

7

"Parties may contract for comparative indemnity," *Ethyl*, 725 S.W.2d at 708–09, subject only to the express-negligence doctrine addressed below in Part II.B. There are no other bespoke rules of construction for contracts providing indemnity: "Courts must construe indemnity agreements according to the normal rules of contract construction." *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 353 (Tex. 2020); *accord Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 284 (Tex. 1998); *Gulf Ins. Co.*, 22 S.W.3d at 423. Scallon voluntarily accepted a contractual "duty to indemnify" S&B and Sunoco for Scallon's "allocable share of comparative, concurrent and/or contributing negligence." Nothing in the contract states that Scallon's share is "allocable" *only* in a trial involving the injured workers, as might be true if there were no indemnification contract at all. Indeed, Scallon agreed to broadly indemnify S&B and Sunoco for "any and all loss, damage, claim, suit, liability, [and] strict liability," among other things, if allocable to its own negligence. This language encompasses settlements (and not just final judgments) at least as much as in other cases decided by this Court in which settlement established a legal responsibility to pay under an indemnity contract. *See, e.g.*, *In re Ill. Nat'l Ins. Co.*, 685 S.W.3d 826, 840 (Tex. 2024); *In re Farmers Tex. County Mut. Ins. Co.*, 621 S.W.3d 261, 270 (Tex. 2021).

But when parties have *not* chosen to contract with each other before such loss arises, statutes governing contribution and comparative negligence are particularly important. Chapter 33, for example, addresses comparative negligence in tort litigation but expressly disclaims any desire to supersede contractual rights: "Nothing in this chapter shall be construed to affect any rights of indemnity granted . . .

8

by contract . . . ." Tex. Civ. Prac. & Rem. Code § 33.017.  To the contrary, the legislature made clear that it gave *preference* to contractual indemnification rights: "To the extent of any conflict between this chapter and any right to indemnification granted by . . . contract . . . , those rights of indemnification shall prevail over the provisions of this chapter."  *Id.*  Chapter 33 invites parties to supplement its provisions. As in other circumstances, "[p]arties are free, of course, to contract out of statutory default rules."  *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 112 (Tex. 2010).

Unsurprisingly, given the foregoing, all parties agree that they *could* by contract impose comparative indemnity.  We hold that they have done so, that *Jinkins* plays no role in the analysis, and that the settlement does not automatically extinguish contractual indemnification rights.

**B**

The only unique interpretive principle applicable to indemnification contracts as distinct from all others is *Ethyl*'s express-negligence doctrine. That doctrine is not substantive.  It allows a party to be indemnified for its own negligence, as long as such an agreement "express[es] that intent in specific terms."  *Ethyl*, 725 S.W.2d at 708.  It is this doctrine that formed the basis for the court of appeals' holding that indemnification is unavailable here.  *See* 716 S.W.3d at 611.

Our rejection of the premise underlying that holding—that no responsibility may be allocated to Scallon, a non-settling party—largely disposes of this ground.  But another aspect of the court of appeals' decision turned on its agreement with Scallon about the purchase agreement's use of the term "indemnify," which the court understood to shift "the entire

9

burden of loss from one tortfeasor to another." *Id.* (quoting *B & B Auto Supply, Sand Pit, & Trucking Co. v. Cent. Freight Lines, Inc.*, 603 S.W.2d 814, 816 (Tex. 1980)). That definition led the court to conclude that indemnification would necessarily cover the negligence of S&B and Sunoco, not just Scallon. The parties' agreement, however, makes clear that the indemnification is proportional, not entire. Neither *Ethyl* nor any other case suggests that parties may not contract as they see fit to adjust the bounds of their risk allocation. *Ethyl*'s only requirement is that express and specific language is necessary before courts will read a contract to indemnify a party for its own negligence.

The contract here does not state any intent for Scallon to indemnify S&B or Sunoco for their negligence; rather, it *disclaims* that intent. It thus satisfies *Ethyl*, which green-lights "comparative indemnity" contracts "so long as they comply with the express negligence doctrine" that *Ethyl* announced. 725 S.W.2d at 708–09. There are various ways to "comply," of course, but *Gulf Insurance* made clear that one was to render the express-negligence doctrine inapplicable by affirmatively disclaiming any entitlement to indemnification for one's own negligence. 22 S.W.3d at 424.

The contract here avoids any express-negligence problem both with its unambiguous disclaimer and by textually limiting Scallon's indemnification to only its *own* "allocable share" rather than seeking some way to force it to bear the burden of S&B's or Sunoco's negligence. There is nothing magical about the word "allocable." Any linguistic formulation is acceptable if the contract makes clear that it is for proportional or comparative indemnification and avoids shifting liability for the indemnitee's negligence to the indemnitor (unless it satisfies *Ethyl*

10

in saying otherwise, of course). Although S&B and Zurich deny any negligence on their part, they readily agree that the contract entitles them to indemnification only if a factfinder allocates a share of responsibility to Scallon for Scallon's negligence.

As numerous amici wrote to us to confirm, contractual agreements for proportional indemnification are commonplace in the circumstance of this case: contractors and subcontractors working on shared projects. Such contracts are enforceable so long as they comply with *Ethyl*. This contract does, and the express-negligence doctrine accordingly poses no obstacle to pursuing contractual indemnification.

**C**

Given the foregoing holdings, we remand the case to the trial court to resolve the merits of the parties' indemnification dispute. S&B and Zurich are entitled to pursue indemnification, but we express no view as to whether or to what extent they should prevail.

Settling before suing for indemnification may well bring certain benefits—not least to the injured workers, who might still be without relief today if their presence was essential before Scallon's "allocable share" could be determined. But as S&B and Zurich have acknowledged, settling before suing also entails various consequences and risks, including that S&B and Zurich may receive no indemnification at all.

For one thing, the posture of this case requires us to assume the validity and applicability of the underlying contract and its indemnification provision. If Scallon has preserved any arguments to the contrary, however, our decision today does not foreclose it from raising them below.

But even when there is no doubt that a contract applies and provides

11

for proportional indemnification, settlement generates a series of burdens for the settling party. First, we have always upheld the right to settle and then sue, but to succeed, the settling party must establish that the settlement was made in good faith and for a reasonable amount to discharge the potential liability. *See, e.g.*, *Fireman's Fund*, 490 S.W.2d at 823. Second, even if the settlement was wholly proper and for a reasonable amount, the settling party bears the burden to show (using this contract's phrasing) the "allocable share" of the indemnitor's negligence. So if the settlement is deemed to have been unreasonably high, for example, then the non-settling party will be responsible only for its proportional share of the amount, if any, that would have been reasonable. A settling party unable to establish that any amount of negligence is attributable to the non-settling party cannot recover at all.

In other words, the contractual right to seek indemnification after settlement comes with risks that create incentives to avoid bad settlements. A defendant that believes itself to be only minimally liable remains highly incentivized to negotiate a favorable settlement: it risks not only a judgment-proof indemnitor, but also the possibility that a factfinder will not be persuaded that the settlement amount was reasonable or that the indemnitor's proportional fault was as high as the indemnitee claims, if present at all.

A trial of this sort would not constitute "satellite litigation" any more here than in any other action seeking to enforce an indemnification provision. At worst, the comparatively streamlined trial to enforce the indemnity agreement would *replace* a far more complex trial, the focus of which would primarily be on the underlying facts and circumstances

of the workers' personal injuries and the extent of their damages. By settling before bringing suit, indemnitees diminish the total litigation burden on all parties. Injured plaintiffs in a case like this one can be made whole without a protracted trial and appeal, even when a co-defendant or indemnitor refuses to participate in settlement negotiations. To the extent that a settlement replaces one complex trial with one streamlined trial, it is more than consistent with Texas law's longstanding encouragement of settlement. *See, e.g.*, *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997). Regardless, the very fact that the parties have agreed in advance to an indemnification relationship represents a contractual obligation that the courts must stand ready to enforce, regardless of their views of the wisdom of the obligation itself.

We are confident that, on remand, the district court will ably, expeditiously, and justly conduct proceedings to bring the litigation springing from the January 2015 accident to a close.

## III

Finally, the court of appeals erred in deeming Zurich's claim untimely. Parties have four years to bring claims arising from written contracts and breach of warranty. Tex. Bus. & Com. Code § 2.725(a); *PPG Indus., Inc. v. JMB/Hou. Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 92 (Tex. 2004). Indemnity claims begin to run when "the indemnitee's liability becomes fixed and certain" through settlement or judgment. *Noble Energy, Inc. v. ConocoPhillips Co.*, 532 S.W.3d 771, 778 (Tex. 2017) (internal quotation marks omitted). Zurich intervened to take Sunoco's claim nearly seven years after the accident, but less than three years after the

settlement made Sunoco's liability fixed and certain. Zurich's claim is not time-barred.

*  *  *

The judgment of the court of appeals is reversed. The case is remanded to the trial court for further proceedings.

 

Evan A. Young
Justice

**OPINION DELIVERED:** March 13, 2026